[L. A. No. 17529. In Bank. Jan. 12, 1942.]

STELLA SCHMIDT HATCH, Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation) et al., Appellants.

[L. A. No. 17530. In Bank. Jan. 12, 1942.]

RUBEN S. SCHMIDT, Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation) et al., Appellants.

[L. A. No. 17531. In Bank. Jan. 12, 1942.]

STELLA SCHMIDT HATCH, as Administratrix, etc., Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation) et al., Appellants.

[L. A. No. 17532. In Bank. Jan. 12, 1942.]

RUBEN S. SCHMIDT, as Executor, etc., Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation), Appellant.

George E. Farrand, Edward E. Tuttle, Edward W. Tuttle, Farrand & Farrand and Leonard B. Slosson for Appellants.

George R. Schmidt for Respondents.

THE COURT.—Plaintiffs brought these actions, which have been consolidated for the purposes of this appeal, in order to quiet title to certain real and personal property. The actions were begun by Stella Schmidt Hatch, Ruben S. Schmidt and Harriet Schmidt Sparks, the children of Hulda Franciska Schmidt who died testate in the city of Los Angeles on December 14, 1930. At the time of her death, Hulda Franciska Schmidt was indebted to the Security-First National Bank of Los Angeles in the sum of $52,000. This debt was evidenced by her unsecured note and that of her son, Ruben S. Schmidt.

Upon the death of Hulda F. Schmidt, each of these children was entitled to an undivided one-fifth of the estate. Ruben S. Schmidt and Harriet Schmidt Sparks became co-executors under the will. Between January 22, 1931 and June 29, 1932, the defendant bank made additional loans to the three children individually, for the purpose of paying off the accumulated debts of the estate. These loans were represented by the individual, unsecured notes of Stella Schmidt Hatch, Ruben S. Schmidt and Harriet Schmidt Sparks, and the unpaid balance thereon amounted to $203,511.15 on June 29, 1932. On that date, pursuant to an order of the probate

court, Ruben S. Schmidt and Harriet Schmidt Sparks, in their capacities as executor and executrix of the estate, executed an unsecured note in the sum of $278,000 as evidence of the sums advanced, and at the same time Stella Schmidt Hatch, Ruben S. Schmidt and Harriet Schmidt Sparks, individually, executed general continuing guaranties in the sum of $300,000 as further security for the indebtedness of the estate. As part of the same transaction the individual notes previously executed by the three children were stamped "Renewed" and were returned by the bank to the makers. By June 16, 1933, the loans to the estate had been increased to $342,000 and on that date the executors, as such, signed a note for this amount and gave a deed of trust covering the real property of the estate. On April 15, 1935, the note was renewed in the sum of $380,000, a new deed of trust was entered into by the executors, and the three children individually executed new general continuing guaranties in the sum of $450,000.

On February 11, 1937, the bank gave notice of default on the executors' note and of an election to sell under the trust deed of April 15, 1935. Thereafter separate suits were commenced against Stella Schmidt Hatch, Ruben S. Schmidt and Harriet Schmidt Sparks on their individual guaranties, and in the course of the actions certain real property belonging to each of them individually was attached. Negotiations were entered into for the purpose of inducing the bank to refrain from selling the property of the estate to satisfy its debt and, as a result, the agreements which form the basis of the present appeal were entered into on October 9, 1937. A written agreement was entered into with Stella Schmidt Hatch, Ruben S. Schmidt and Harriet Schmidt Sparks individually, by the terms of which the bank released them from further personal liability upon their general guaranties and agreed to dismiss the attachment suits previously instituted. The children, however, agreed to execute a deed of trust covering parcels of real property, owned by them individually, as additional security for the existing indebtedness of the estate and for any further loans. On the same day, Ruben S. Schmidt and Harriet Schmidt Sparks, as executors of the estate of Hulda F. Schmidt and, with the authorization of the probate court, entered into a written agreement with the bank by which they pledged certain personal property owned by the estate as additional security. As a result of these contracts, the bank agreed to defer sale proceedings under the executors' deed of trust until November 15, 1938.

On December 8, 1938, a trustee's sale was held at which the real property of the estate was sold at public auction for the sum of $385,790. This was applied to the amount then due, $514,004.22, leaving an unpaid balance of $128,214.22. On February 28, 1939, a pledge sale was held at which the personal property of the estate pledged by the executors was sold for $9,000, of which the sum of $7,005.56 was applied to the principal of the debt and the remainder to the interest. On March 28, 1939, a trustee's sale was held at which the real property covered by the individuals' deed of trust was sold for the sum of $91,760.81. The proceeds of this sale were used, to satisfy the remaining debt, consisting of the principal sum of $121,208.66, plus interest, advances and charges of the trustee, which brought the amount of the debt claimed to $137,730.59. After application of the proceeds of the sale of March 28, 1939, to the debt, the sum of $45,969.78 remained unpaid, for which the bank claimed no further security or right of action.

On March 27, 1939, these quiet title actions were filed by Stella Schmidt Hatch, Ruben S. Schmidt and Harriet Schmidt Sparks against the Security-First National Bank of Los Angeles, the beneficiary under the individuals' deed of trust, and the Los Angeles Trust & Safe Deposit Company, the trustee. In these actions, filed the day before the trustee's sale covering the same property, plaintiffs sought to establish their title to the real property previously owned by them as individuals. Harriet Schmidt Sparks died on May 11, 1939, after the institution of the action in L. A. 17,531, and her sister, Stella Schmidt Hatch, has been substituted as her administratrix in that action. On May 23, 1939, Ruben S. Schmidt, as the surviving executor of the estate of Hulda F. Schmidt, filed the fourth quiet title action, L. A. 17,532, against the Security-First National Bank of Los Angeles, seeking to establish the interest of the estate in the personal property which had been previously sold at the pledge sale held on February 28, 1939. These four cases were tried together in the court below, and by stipulation there is but a single set of consolidated findings although the court entered separate judgments. In each case judgment was entered for the plaintiff, and the defendant bank appeals from the judgments thus rendered.

The trial court concluded that the pledge sale on February 28, 1939, and the sale under the individuals' deed of trust, held on March 28, 1939, were invalid. In each case it was determined that title to the property involved remained in the

original owner thereof. This holding was based solely upon the finding that, after the trustee's sale of the real property belonging to the estate of Hulda F. Schmidt under the trust deed of April 15, 1935, neither of the defendants took any steps pursuant to Code of Civil Procedure, sections 580a, 725a and 726, for the purpose of determining the existence of an actual deficiency. Upon this appeal defendants urge that these sections of the Code of Civil Procedure have no application to a situation where, as in the present case, no attempt is made by the creditor to secure a personal judgment against a debtor for a deficiency remaining after sale under a deed of trust. Since there is no other claim of invalidity, it is contended that the sale held in each case is valid and that the judgments for the plaintiffs should be reversed.

Code of Civil Procedure, sections 725a and 726, provide a specific procedure for the entry of a personal judgment for the deficiency remaining after a creditor has brought an action for judicial foreclosure under a deed of trust or mortgage. Since there was no judicial foreclosure in the present cases, these provisions of the statute have no direct application. Section 580a of the Code of Civil Procedure, however, provides a similar procedure where a personal judgment is sought after the creditor has exercised the power of sale granted in a deed of trust or mortgage. It reads: "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale. . . . Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment . . . exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said

deed of trust or mortgage. Any such action must be brought within three months of the time of sale under such deed of trust or mortgage . . ." This section also provides for the appointment of appraisers by the court for the purpose of determining the fair market value of the real property sold under the deed of trust or mortgage. The purpose underlying this legislation was discussed in *Kirkpatrick* v. *Stelling,* 36 Cal. App. (2d) 658 [98 Pac. (2d) 566] in which the court said at page 665 : "When a lending agency determines to lend money on the security of a specific parcel of real property, it is told by the statutes of California that in case of default, before it can secure a personal judgment against the borrower, it must first exhaust its security. (Sec. 726, Code Civ. Proc.) This it may do, in either of two ways—it may foreclose (and this is so whether the security transaction takes the form of a mortgage or deed of trust—sections 725a, 726, Code Civ. Proc.) or it may sell under the power of sale in the mortgage or deed of trust . . . [These provisions (secs. 580a, 725a and 726)] tell the lending agency by statute at the time that it makes the loan, that its primary security is a specific parcel of land . . . and that if, in the case of default, it desires to realize on the security . . . it must secure at private or judicial sale the fair market value of the security, and if it does not its recovery in a personal action will be measured accordingly." The evil which led to the enactment of this legislation became pronounced during the recent period of economic depression when creditors were frequently able to bid in the debtor's real property at a nominal figure and also to hold the debtor personally liable for a large proportion of the original debt. (See (1934) 22 Cal. L. Rev. 170, 181.)

Plaintiffs urge that where a creditor holds a mortgage or deed of trust as security for an obligation and resorts to that security either by judicial foreclosure or by power of sale, he may take no further steps to collect his debt unless he proceeds within three months, under sections 580a, 725a or 726, to establish the existence of an actual deficiency in the amount realized from the original security. Thus, in the present case it is said that the bank, which had resorted to the security furnished by the executors' deed of trust, should have proceeded under section 580a before attempting to realize upon the additional security held by it under the pledge agreement and the individuals' deed of trust. Unless the creditor proceeds under section 580a to establish the existence of an

unpaid balance after resorting to his security, plaintiffs contend that it will be presumed that he has realized enough to satisfy the debt in full. Acting upon this theory, the trial court concluded that the indebtedness of the estate to the defendant bank was fully paid and discharged, that the sales held subsequently were invalid, and that title to the property involved still remains in the plaintiffs. ▋ Defendant concedes that, after resort to the principal security held by it, it would be necessary to bring an action under section 580a within three months in order to obtain a personal deficiency judgment against the debtor for any unpaid balance. But, it is argued, that statute imposes no such requirement where the creditor merely seeks to realize upon additional security held by him and makes no attempt to secure a personal judgment for the unpaid balance.

The interpretation placed upon the statute by the defendant is clearly the correct one. The limited scope of section 580a is indicated by the language of that section. Thus, it provides: *"Whenever a money judgment is sought for the balance due* upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property . . . was given as security, following the exercise of the power of sale . . . the *plaintiff shall set forth in his complaint* . . . [etc.] . . . *Any such action* must be brought within three months . . ."* (Italics added.) Cases which have discussed this legislation have referred to it solely as a limitation upon the creditor's right to obtain a personal judgment for a deficiency against his debtor. (*Bank of America* v. *Hunter,* 8 Cal. (2d) 592, 598 [67 Pac. (2d) 99] ; *Miller* v. *Hart,* 11 Cal. (2d) 739, 743 [81 Pac. (2d) 923] ; cf. *Rust* v. *Hill,* 17 Cal. (2d) 517 [110 Pac. (2d) 657] ; *Bennett* v. *Superior Court,* 5 Cal. App. (2d) 13 [42 Pac. (2d) 80] ; *California Trust Co.* v. *Smead Inv. Co.,* 6 Cal. App. (2d) 432 [44 Pac. (2d) 624] ; *Hillen* v. *Soule,* 7 Cal. App. (2d) 45 [45 Pac. (2d) 349] ; *Bank of America* v. *Hirsch,* 13 Cal. App. (2d) 681 [57 Pac. (2d) 521] ; *Reynolds* v. *Jensen,* 14 Cal. App. (2d) 558 [58 Pac. (2d) 687] ; *Birkhofer* v. *Krumm,* 27 Cal. App. (2d) 513, 533 [81 Pac. (2d) 609] ; *Drapeau* v. *Smith,* 34 Cal. App. (2d) 84 [93 Pac. (2d) 157] ; *Bank of America* v. *Gillett,* 36 Cal. App. (2d) 453 [97 Pac. (2d) 875] ; *Kirkpatrick* v. *Stelling, supra; Read* v. *Mills Bldg. Co.,* 39 Cal. App. (2d) 140 [102 Pac. (2d) 542] ; cf. *Hibernia S. & L. Soc.* v. *Lauffer,* 41 Cal. App. (2d) 725, 732 [107 Pac. (2d) 494].) In *Bank of America* v. *Hunter, supra,*

at page 598, the court said: "A reading of section 580a, *supra*, as added in 1933, discloses that its provisions have to do solely with *actions for recovery of deficiency judgments on the principal obligation after sale under trust deed or mortgage,* as distinguished from a guarantor's obligation . . ." (Italics added.) Section 580a refers to an action to secure a "money judgment . . . for the balance due upon an obligation." The action thus characterized has long been described in this state as an action to obtain a deficiency judgment. Such an action is required where the creditor seeks a personal judgment for the unpaid balance due upon an obligation after unsuccessful resort to the security. (*Sacramento Bank* v. *Copsey,* 133 Cal. 663 [66 Pac. 8, 205, 85 Am. St. Rep. 242] ; *Kraft Co.* v. *Bryan,* 140 Cal. 73 [73 Pac. 745] ; *Blythe* v. *Lamberth,* 39 Cal. App. 583 [179 Pac. 533] ; 25 Cal. Jur. 104.) The provisions of section 580a clearly refer to this situation.

Plaintiffs argue that section 580a should be interpreted so as to require the creditor to obtain a judicial determination of the unpaid balance remaining after sale under a deed of trust or mortgage before resorting to any additional security which he may hold. The language of section 580a does not indicate that the legislature had any intention of thus protecting property which is only secondarily liable as security for the principal obligation. By its express terms, the statute is concerned only with actions to recover deficiency judgments after the security is exhausted and plaintiffs have cited no convincing authority in support of their position. They rely upon *Estate of Naegely,* 31 Cal. App. (2d) 470 [88 Pac. (2d) 715]. In that case the court held that failure to commence an action to secure a deficiency judgment within three months under section 580a operated to bar recovery upon the unpaid balance. The right to such a recovery was said to be dependent upon compliance with section 580a and the court said (p. 475), "This is equally true of the rights of the holder of an obligation secured by a deed of trust *against the estate of a deceased maker* as it is of the rights of the holder of such an obligation *against a living maker thereof."* (Italics added.) The case thus holds that the requirements of section 580a must be observed in attempting to recover a deficiency judgment, whether against the debtor himself or against his estate, but it does not support the proposition that steps must be taken under section 580a before the creditor is entitled to resort to additional security secondarily liable for the prin-

cipal obligation. Similarly, cases from other jurisdictions upon which plaintiffs rely were decided under statutes fundamentally different from Code of Civil Procedure, section 580a. The New York statute referred to provides specifically that, in the event of failure on the part of the mortgagee to move for a deficiency judgment thereunder, "the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt . . ." (Civil Practice Act, sec. 1083-a.) Failure to request a deficiency judgment at the proper time, in other words, is tantamount to conceding that the mortgage debt has been paid in full by the proceeds from the foreclosure sale. (See, *Lang* v. *New York Joint Stock etc. Bank,* 155 Misc. 779 [280 N. Y. Supp. 766]; *Bedcro Realty Corp.* v. *Title G. & T. Co.,* 175 Misc. 1082 [27 N. Y. Supp. (2d) 169]; *Waitt Operating Co., Inc.* v. *New York Life Ins. Co.,* 29 N. Y. Supp. (2d) 705, 708.) Agreements for additional security, therefore, have been construed in the light of this statutory language, and it has been held that the parties intended to give the mortgagee no right to realize upon additional security in a situation where he has, in effect, conceded that the mortgage debt is paid in full. (*In re Williams' Will,* 258 App. Div. 592 [17 N. Y. Supp. (2d) 335, 336]; *Bedcro Realty Corp.* v. *Title G. & T. Co., supra.*) The statute relied upon in the present cases, however, does not provide that failure to sue thereunder for a deficiency judgment is to be deemed a concession that the principal obligation has been fully satisfied. In the absence of such a provision, the cases relied upon are not persuasive authority in interpreting Code of Civil Procedure, section 580a.

Under the facts of the present cases, since the defendant has at no time attempted to secure a deficiency judgment against anyone, it is clear that section 580a is not applicable. It imposes no requirement which would invalidate the pledge sale or the sale under the individuals' deed of trust. It has already been pointed out that sections 725a and 726 have no application to the facts of this case (*supra*). Since the judgments in these cases are based solely upon the finding that defendant failed to proceed under these sections of the Code of Civil Procedure, it follows that each of the judgments appealed from is erroneous.

The judgments are, and each of them is, hereby reversed.

Respondents' petition for a rehearing was denied February 11, 1942.