[No. H004926. Sixth Dist. June 26, 1991.]

BERT RETTNER, Plaintiff and Respondent, v.
FRANK SHEPHERD et al., Defendants and Appellants.

COUNSEL

Charles F. Oakley for Defendants and Appellants.

Popelka, Allard, McCowan & Jones and Marc L. Shea for Plaintiff and Respondent.

OPINION

COTTLE, J.—Defendants appeal, inter alia, from a postjudgment order establishing the sum owing on an existing judgment as $258,990.47. They claim the judgment has been satisfied in full and, in any event, plaintiff is barred by the one form of action rule (Code Civ. Proc., §§ 725a, 726)[1] and the antideficiency statutes (§§ 580a, 580d) from further collection efforts. We agree. Accordingly, we shall reverse the court's postjudgment orders.

## FACTS

All legal proceedings in this case, with the exception of a bankruptcy action discussed *post*, took place in Santa Clara County Superior Court number 385637. Plaintiff Bert Rettner obtained a judgment in that action in 1979 against defendant Frank Shepherd. The amount of the judgment was $366,118.53. When Shepherd appealed, his brother William filed a surety undertaking.

On June 22, 1983, the First District Court of Appeal filed its opinion in this action affirming Rettner's judgment. Six weeks later, Frank and William

---

[1]All further statutory references are to the Code of Civil Procedure.

transferred certain property they owned on Saratoga Avenue in San Jose to a newly formed corporation (Shasta) "in return for the issuance of stock and securities to them in equal shares and number of shares." The August 8, 1983, agreement memorializing the transfer recited that William would "make application for a land advance and construction loan secured by said real property. Funds are to be obtained for the purposes of paying the Retner [*sic*] judgment against Frank C. Shepherd and to develop and build an office complex or other approved income producing improvements upon said real property as soon as possible." The grant deed transferring title to Shasta was notarized on August 17 and filed on August 25, 1983. The Court of Appeal's remittitur issued on August 23.

In September 1983, Rettner's former attorney, Dave Schachter, learned about the conveyance of the Saratoga Avenue property. He felt it was a fraudulent conveyance and threatened a motion in the instant lawsuit to set it aside. William testified at his deposition that he told Schachter the conveyance was not fraudulent and that as a sign of good faith the corporation would present a note and deed of trust against the Saratoga Avenue property to Rettner. He also testified he told Schachter he wanted to secure the judgment with a note and deed of trust, which "should take care of the judgment." He stated the note and deed of trust had been given in "satisfaction" of the judgment.

After this conversation, Schachter prepared a promissory note in which Shasta promised to pay the amount then owing on Rettner's judgment within the next 75 days. Among the recitals in the note were the following: "It is expressly agreed and understood by and between the parties hereto that the said sum of $518,065.85 promised herein represents the money judgment, together with interest and costs therein, awarded in favor of BERT RETTNER in that certain lawsuit entitled BERT RETTNER VS. FRANK SHEPHERD, which lawsuit was filed in the County of Santa Clara, State of California, bearing action number 385637. [¶] It is further agreed and understood by and between the parties hereto that WILLIAM JM SHEPHERD and FRANK SHEPHERD are each jointly and severally liable for the entire amount of said judgment. [¶] It is further agreed and understood by and between the parties hereto that Shasta Industries Corporation was formed by WILLIAM JM SHEPHERD and FRANK SHEPHERD for the purpose, among others, of securing financing on that certain piece of real property described in the Deed of Trust executed herewith, and paying from the amounts financed therein the sum of $518,065.85 as set forth in this promissory note." William signed the promissory note and deed of trust on behalf of Shasta on September 26, 1983.

Later that same day, Schachter obtained a judgment in this lawsuit against William on his surety undertaking in the amount of $518,065.85. When, 75

days later, Shasta failed to pay off the note as promised, Rettner caused a notice of default to be recorded. Rettner's new attorney, Marc Shea, also initiated other efforts to enforce the judgment. In April 1984, Shea recorded abstracts of judgment against both Frank and William and filed a notice of lien in an action in which Frank and William were suing a title insurer. He also filed a judgment lien on personal property with the Secretary of State. In May 1984, he requested the sheriff to levy upon Frank's real property and sought and obtained an order directing William to turn over stocks and bonds to the sheriff. He served William with an order for examination of judgment debtor, and when William failed to appear, he obtained a bench warrant for his appearance, which was stayed. In June 1984, he caused a notice of sale to be recorded on the Saratoga Avenue property.

William paid Rettner $20,000 in August and September 1984 to postpone the trustee's sale date on the Saratoga Avenue property. The parties agreed on October 9 and 10, 1984, to a new arrangement whereby: (1) Shasta would transfer title to the Saratoga Avenue property to Saratoga Regency Place, a newly formed limited partnership, whose general partner was Gavilan Development Company and whose limited partner was Shasta; (2) Saratoga Regency Place would refinance the property, taking out a new first deed of trust for $377,000. Toward this end, Rettner would subordinate his position to the new lender; (3) The borrowed money would be used to pay off various judgment liens which were superior to Rettner's; and (4) Rettner would cancel the Shasta note in return for a partial payment in the amount of $145,000 and for a new note from Saratoga Regency Place in the amount of $404,555, secured by a deed of trust. The recital that William and Frank remained jointly and severally liable was not carried forward into the Saratoga Regency Place note.

The note called for the first $50,000 payment to be made on or before January 9, 1985. When that payment was not made, Rettner recorded a notice of default. On May 9, he recorded a notice of trustee's sale. The property was sold at the trustee's sale on August 13, 1985, to Rettner for his credit bid of $200,000. Rettner resold the property the following month for $950,000, subject to a first deed of trust in the amount of $377,000 and other encumbrances.

Rettner did not request a fair-value hearing (§§ 580a, 726) or file a complaint for the deficiency within three months of the foreclosure sale. However, Rettner's attorneys advised Frank and William on numerous occasions between 1984 and August 1985 that they would proceed against defendants for the balance owing on the judgment if the proceeds from the trustee's sale were insufficient to satisfy the judgment.

In April 1986, Rettner paid $11,767.92 to cure a default on other property owned by Frank. In August of that year, Rettner filed motions with the trial court: (1) to "set credit to judgments following deed of trust foreclosure [capitalization omitted];" (2) for reimbursement of funds expended in April 1986 curing the default on Frank's other property; and (3) for reissuance of a 1984 writ of execution.

Due to discovery disputes, the motions were taken off calendar. They were renoticed in February 1988. On July 12, 1988, the trial court issued its order granting all three motions. William and Frank timely filed a notice of appeal on September 12, 1988.

On December 7, 1988, Frank filed a chapter 13 petition with the United States Bankruptcy Court for the Northern District of California. Subsequently, Rettner filed a "complaint to determine dischargeability and/or judgment [capitalization omitted]" in the bankruptcy court. Frank moved for summary judgment on Rettner's complaint, and Bankruptcy Judge Warren Moore granted the motion, holding as a matter of law that Rettner's judgment was satisfied. On June 9, 1989, Rettner filed a motion for reconsideration. However, before the motion could be heard, Judge Moore died. The judge who was assigned the motion noted that "the orders made by Judge Moore on May 31 appear to be proper orders." Nevertheless, he concluded that the "issue . . . whether the Rettner judgment has been extinguished . . . ought to be decided on the merits by the state courts . . . ." He further ordered: "If the state appellate court declines to hear the appeal on the merits, then the debtor shall immediately initiate proceedings to determine the validity of Rettner's claim, which shall be heard *de novo* by the bankruptcy court."

During the pendency of the bankruptcy action, this court dismissed Frank and William's appeal for failure to prosecute. We had not been told of and we were unaware of the bankruptcy filing. The bankruptcy court, however, was of the opinion that the proceedings in this appeal were automatically stayed by the filing of the bankruptcy petition. (See 11 U.S.C. § 362(a)(1).) After the second bankruptcy judge entered his order granting Rettner's motion for reconsideration, Rettner filed an ex parte application in this court to set aside our remittitur as it applied to Frank Shepherd. We requested additional briefing on numerous issues including whether there was legal authority for this court to recall its remittitur and whether any of the issues presented affected the dismissal of William Shepherd. William and Frank then filed their own ex parte application to set aside the remittitur and reopen their joint appeal. Rettner filed a letter response in which he argued, inter alia, that he did not believe that William had ever in fact filed an appeal, that William's appeal was not stayed by Frank's bankruptcy, that his appeal was

finally decided, and that it should not be reopened. On March 2, 1990, we issued our order recalling the March 9, 1989, remittitur, which dismissed Frank and William's joint appeal, on condition "appellants" secure an order from the bankruptcy court lifting the stay and "appellants" pay estimated fees for preparation of the record. Appellants obtained the order and the remittitur was recalled.

## STANDARD OF REVIEW

■ "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. (See generally *People* v. *Louis* (1986) 42 Cal.3d 969, 985-987 [parallel citation].)" (*Crocker National Bank* v. *City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

## DISCUSSION

■ "In California, as in most states, a creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute. Under California law, 'the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.' [Citation.]" (*Guild Mortgage Co* v. *Heller* (1987) 193 Cal.App.3d 1505, 1510 [239 Cal.Rptr. 59], fn. omitted.)

■ Defendants contend that Rettner's right to a deficiency judgment[2] against them is barred by section 580d. We agree.[3] The

---

[2]A " 'deficiency judgment' is a personal judgment against the debtor for the difference between the debt and the proceeds received by the creditor from the sale of the security at a . . . foreclosure sale. [Citation.]" (*Coppola* v. *Superior Court* (1989) 211 Cal.App.3d 848, 866 [259 Cal.Rptr. 811].)

[3]Because we reverse on this point, we need not address the remaining issues raised by defendants as grounds for reversal.

reason is because Rettner elected to foreclose on the security *nonjudicially* (exercising the power of sale in the deed of trust) rather than judicially.

Section 580d prohibits judgments "for any deficiency upon a note secured by a deed of trust" in any case in which the real property has been sold under a power of sale contained in the deed of trust. The purpose of this rule is to put judicial enforcement of a trust deed, which is subject to the statutory right of redemption, on a parity with private enforcement, in which there is no right to redeem. (*Walter E. Heller Western, Inc.* v. *Bloxham* (1985) 176 Cal.App.3d 266, 271 [221 Cal.Rptr. 425].)

Rettner argues that this rule does not apply to him, however, because he is not a secured creditor subject to the antideficiency and one action laws. Rather, he claims to be a judgment creditor on an unsecured debt who was given additional security (i.e., the notes and deeds of trust) for the judgment. California law gives judgment creditors on unsecured obligations broad and expansive rights, not subject to antideficiency legislation, to enforce their judgments. (See generally § 680.010 et seq.)

The determination of whether Rettner was a secured creditor or an unsecured creditor is a mixed question of law and fact in which the legal issues—the applicability of the antideficiency, one action, and fair-value hearing statutes to the facts of this case (Cf. *Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630])—predominate. "[Since] the [pertinent] inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. [Citation.]" (*Crocker National Bank* v. *City and County of San Francisco, supra,* 49 Cal.3d 881, 888.)

Our independent review leads us to conclude that Rettner was a secured creditor. Although his judgment against defendants was initially unsecured, it became a secured obligation in September 1983 when he accepted a note and deed of trust on the Saratoga Avenue property in satisfaction of the judgment.

Rettner argues that defendants should be estopped from claiming the advantage of the antideficiency statutes because the facts establish that defendants fraudulently conveyed the Saratoga Avenue property to Shasta to prevent Rettner from collecting on his judgment. Rettner cites William's statement that he did not believe the judgment was just, Frank's statement that he told Rettner he would not collect, the timing of the conveyance, and Frank's postjudgment bankruptcy filings.

However, Rettner fails to mention the most credible evidence—the only agreed upon evidence—as to defendants intent in conveying the property.

The promissory note, *written by Rettner's attorney*, recites the reason for the conveyance as follows: "[to secure] financing on that certain piece of real property described in the Deed of Trust executed herewith, and paying from the amounts financed therein the sum of $518,065.85 as set forth in this promissory note." Although the note states this was "the purpose, among others," the other purposes could not logically include preventing Rettner from collecting on his judgment. One cannot simultaneously intend to pay off a judgment and at the same time intend not to pay it off. In short, the single purpose for which the corporation was formed about which the parties *expressly agreed* was to secure financing to pay Rettner. Additionally, the agreement between Frank and William transferring the property to Shasta recited as its purpose obtaining funds "for the purposes of paying the Retner [*sic*] judgment against Frank C. Shepherd and to develop and build an office complex or other approved income producing improvements upon said real property as soon as possible."

Defendants' purpose in transferring the property is not, however, the determinative issue in this case. The determinative issue is whether defendants' obligation to Rettner became a secured obligation in September 1983 when Rettner agreed to accept a note and deed of trust on the Saratoga Avenue property in exchange for giving up his legal right to attempt to set aside the conveyance and execute on the property.

While the parties may dispute what they intended when entering into the September 1983 agreements,[4] there is no dispute as to what their agreement actually says. In the promissory note written by Rettner's attorney, the parties "expressly agreed and understood" that the $518,065.85 promised in the note *"represents the money judgment,* together with interest and costs therein, awarded in favor of BERT RETTNER in that certain lawsuit entitled BERT RETTNER VS. FRANK SHEPHERD." (Italics added.) In other words, the parties agreed that Rettner would look to the note and its security for the money judgment. At the same time, a provision was inserted stating that Frank and William would remain jointly and severally liable for the entire judgment.

Ignoring for a moment the fact that the Shasta note, which contained the joint and several liability provision, was cancelled and replaced by a new

---

[4]Rettner presented his and his former attorney's declarations stating that neither believed they were accepting the note and deed of trust in satisfaction of Rettner's judgment against defendants. Defendants, on the other hand, presented declarations from William's former attorney, from the loan broker arranging the construction loan on the Saratoga Avenue property, and from the real estate developer all stating that the parties agreed that the execution of the promissory note and deed of trust would satisfy the judgment.

note *which did not contain the joint and several liability provision*, the question remains: can a creditor who accepts a note secured by a deed of trust on real property avoid the bar against deficiency judgments by reciting in the note that the debtors remain liable? It is well settled that the proscriptions of section 580d cannot be avoided through artifice (*Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1508 [236 Cal.Rptr. 59]), nor can the debtor be compelled to waive its provisions in advance (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467-468 [289 P.2d 463]). This is "because the antideficiency legislation was established for a public reason and cannot be contravened by a private agreement. [Citation.] In determining whether a particular recovery is precluded, we must consider whether the policy behind section 580d would be violated by such a recovery. [Citation.]" (*Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508, 515 [259 Cal.Rptr. 425].)

 In this case, Rettner had two choices in 1983: he could attempt to enforce his judgment as an unsecured creditor under the provisions of section 680.010 et seq., or he could give up those rights in exchange for a promissory note secured by valuable real property. He appears to argue here that he had a third choice because he included the joint and several liability provision in the note: to get the benefits enjoyed by secured creditors while avoiding the proscriptions of the antideficiency rules.

In *Freedland* v. *Greco, supra*, 45 Cal.2d 462, 467, the creditor attempted to avoid the effect of section 580d by signing two notes, one secured by a chattel mortgage and one secured by real property, each for the full amount of the same obligation. The court held that it would be "unreasonable to say the Legislature intended that section 580d could be circumvented by such a manifestly evasive device" where in that case "both notes represented only a single sum owing from defendant to plaintiffs." Likewise in this case, the provision holding Frank and William jointly and severally liable for the judgment was an attempt to circumvent the effects of section 580d by allowing Rettner to seek a deficiency if the security proved to be insufficient. This provision is unenforceable because it violates the policy behind section 580d. (*Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra*, 211 Cal.App.3d 508, 515.)

Moreover, as noted above, the joint and several liability language found in the Shasta note was not carried forward into the Saratoga Regency Place note. Rettner accepted $145,000 and a new note in satisfaction for cancelling the note with the joint and several liability provision. The real property was sold under the power of sale in the deed of trust securing this latter

note. In this case it is clear that the antideficiency bar of section 580d applies.

Although Rettner maintains he is an unsecured creditor, he argues alternatively that even *secured* creditors may avoid the one action and antideficiency rules where (1) multiple security is given for the creditor's note, or (2) there are two separate and distinct obligations.

He contends that the note in this case (actually, two notes) was simply "additional security" provided by a third party corporation. In *Hatch* v. *Security-First Nat. Bank* (1942) 19 Cal.2d 254 [120 P.2d 869], the Supreme Court held that the fair value provisions of section 580a did not apply where the creditor did not seek a deficiency judgment but rather merely disposed of its multiple security through piecemeal extrajudicial sales. In this case, however, defendants did not secure their note to Rettner with any security other than the deed of trust on the real property. Thus, there was no additional security for the note. (In *Hatch*, in contrast, the creditor bank made a series of loans over a period of five years to the three children of Hulda Schmidt, who died testate in 1930, for the purpose of paying off estate debts. Eventually, the loans totalled $450,000. At various times, the children executed notes in favor of the bank secured by the estate's real property, the estate's personal property, and some of their own real property.)

Rettner also contends he may avoid the antideficiency statutes because there are two separate and distinct obligations here—first, the note and deed of trust and second, the judgment. He relies on *Passanisi* v. *Merit-McBride Realtors, Inc., supra,* 190 Cal.App.3d 1496, an action in which a debtor had filed suit against the creditor to enjoin a foreclosure sale. The creditor successfully resisted the debtor's action, and the trial court granted the creditor its attorney's fees. Later debtor argued the one form of action rule precluded creditor from recovering its attorney's fees. The court rejected this argument, noting that the rule applies only when a creditor brings the action (there, debtor brought it) and only when the action is " 'for the recovery of any debt or the enforcement of any right secured by [the deed of trust] upon real property' " (there, the action was to enjoin the exercise of the power of sale in the deed of trust). In other words, in *Passanisi*, the obligation to pay attorney's fees for bringing an unmeritorious lawsuit was separate and distinct from the obligation the debtor owed with respect to his secured promissory note. Here, in contrast, there is no separate obligation: Rettner brought his motion to establish the amount by which the proceeds from the trustee's sale on the real property failed to satisfy the debt secured by a deed

of trust on that property. Therefore, unlike *Passanisi*, this is a case in which the antideficiency statutes do apply.

Accordingly, we reverse the trial court's order establishing the sum owing on the judgment to be $258,990.47. We also reverse the two other postjudgment orders (one reissuing the 1984 writ of execution, the other granting Rettner costs for sums expended after the trustee's sale) because both presuppose Rettner had a right to proceed against other property owned by defendants.

Finally, we address Rettner's contention that William's appeal is time barred. He indicates he "does not know whether the Court of Appeal, in recalling its March 14, 1989, remittitur, made a decision whether to recall as to FRANK SHEPHERD's appeal only, or as to both FRANK SHEPHERD and WILLIAM SHEPHERD's appeal." He further indicates that if the court recalled the remittitur as to both defendants, he "does not know if that decision was made with or without prejudice to presenting argument in these papers." Our March 2, 1990, order recalled the remittitur, which dismissed both defendants' appeals. The effect of this was to reinstate both defendants' appeals. Therein we stated: "Pursuant to the request of appellants concur[r]ed in by respondent (at least as to appellant Frank Shepherd) and considering the order of United States Bankruptcy Judge Alan Jaroslousky entered upon his Memorandum of Decision filed September 26, 1989, in In re Frank Shepherd Case No. 588-06282 W C M pending in the U. S. Bankruptcy Court for the Northern District of California, it is hereby ordered that the remittitur issued herein on March 9, 1989 is hereby recalled on condition that appellants secure an order of said Bankruptcy Court within 10 days hereof lifting the automatic stay of this proceeding effected by the filing of Frank Shepherd's bankruptcy petition. [¶] Appellants shall thereafter deposit, with the Superior Court, the estimated fee for preparation of the record within 15 days of the date of this order." Prior to taking this action, we requested and received extensive briefing on the issue of whether the appeal should be reinstated as to only Frank or whether it should be reinstated as to both defendants. We decided at that time, after considering the bankruptcy judge's memorandum decision and the parties' arguments, that the remittitur should be recalled as to both defendants. We will not reconsider that issue now.

The postjudgment orders are reversed with directions to vacate the previous orders and to enter a new order declaring that the judgment has been

satisfied and Rettner is barred by section 580d from further collection efforts. Costs are awarded to appellants.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied July 25, 1991, and respondent's petition for review by the Supreme Court was denied September 18, 1991.