In re Jeffrey KEARNS and Dinetha Kearns, Debtors.

Jeffrey Kearns and Dinetha Kearns, Appellants,

v.

Transamerica Home Loan, Appellee.

BAP No. CC–03–1529–KMoA.
Bankruptcy No. SA 96–13879–RA.
Adversary No. SA 98–01747–RA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 20, 2004.

Filed Aug. 27, 2004.

As Amended Sept. 2, 2004.

Dennis C. Winters, Santa Ana, CA, for Jeffrey Kearns, Dinetha Kearns, Appellants.

Steven B. Scow, Sheppard, Mullin, Richter & Hampton LLP, Costa Mesa, CA, for Transamerica Home Loan, Appellee.

Before KLEIN, MONTALI, and ALLEY,[1] Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This secured consumer loan question of apparent first impression requires that we harmonize California's so-called "one-action/security-first" real estate foreclosure statute with its "mixed collateral" variation of Uniform Commercial Code § 9–604, which regulates enforcement of rights when one loan is secured by both real and personal property.

The narrow question is whether the exercise of nonjudicial remedies against personal property collateral under California Commercial Code § 9604 renders unenforceable a lien on real property by virtue of California Code of Civil Procedure § 726. Thus, rather than being a "one-action/security first" case, this is a "one-action/which-security-first?" case.

---

1. Hon. Frank R. Alley, Bankruptcy Judge for the District of Oregon, sitting by designation.

■ Reading the California statutes together, we conclude that Commercial Code § 9604(a) clarifies (even for consumer loans) the "security-first" principle of Code of Civil Procedure § 726 by providing that mixed real and personal property security may, so long as the debt is not reduced to judgment, be pursued *nonjudicially* in any sequence without rendering unenforceable a real property lien.

■ Since the creditor did not offend the "one-action" aspect of Code of Civil Procedure § 726 when it nonjudicially took and sold personal property collateral and has done nothing other than resort to security, we AFFIRM the summary judgment determining that the creditor's real property lien was not forfeited.

## FACTS

In November 1995, Jeffrey and Dinetha Kearns borrowed $34,658.53, for personal, family or household purposes, from appellee Transamerica Home Loan's predecessor (collectively, "Transamerica") in a California transaction. As security, Transamerica obtained two separate liens—one in an automobile and the other a deed of trust on real estate.

The Kearns filed a chapter 7 bankruptcy in April 1996 and received a discharge in a routine no-asset case. Although the discharge eliminated the debtors' personal liability on the debt, the Transamerica liens survived the bankruptcy.

Post-bankruptcy, the debtors defaulted on their obligation to Transamerica, which nonjudicially repossessed and sold the automobile collateral in a commercially reasonable manner.

In July 1998, the debtors sold their real estate upon which Transamerica still had a recorded deed of trust. Transamerica placed a demand in escrow and received $17,398 of the sale proceeds after it refused to reconvey the deed of trust.

The debtors sued Transamerica in bankruptcy court, contending that the real property lien was satisfied by the vehicle repossession and requesting damages for violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(2), refusal to reconvey the deed of trust, and slander of title.

The bankruptcy court awarded Transamerica summary judgment, ruling that it had not violated Code of Civil Procedure § 726.

This appeal ensued.

## JURISDICTION

Federal subject-matter jurisdiction was founded on 28 U.S.C. § 1334(b). It was a core proceeding to the extent the action sought to enforce the Bankruptcy Code. 28 U.S.C. § 157(b)(2)(O). The parties consented to have the non-core damage counts under nonbankruptcy law for slander of title and not reconveying heard and determined by a bankruptcy judge. 28 U.S.C. § 157(c)(2). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether a creditor's repossession and sale of a vehicle in a manner permitted by California's Commercial Code offended the "one-action" aspect of its Code of Civil Procedure § 726 so as to render unenforceable its deed of trust on real property.

2. Whether a creditor's repossession and sale of a vehicle in a manner permitted by California's Commercial Code offended the "security-first" aspect of its Code of Civil Procedure § 726 so as to render unenforceable its deed of trust on real property.

## STANDARD OF REVIEW

■ We review a grant of summary judgment de novo. *Svob v. Bryan (In re Bryan)*, 261 B.R. 240, 243 (9th Cir. BAP 2001).

## DISCUSSION

This opinion deals fundamentally with post-bankruptcy matters. The loan default, the nonjudicial enforcement of the security interest in personal property that supposedly offended the "one-action/security first" statute, and the subsequent refusal to reconvey the deed of trust all occurred after bankruptcy with respect to liens that had already survived bankruptcy even though the discharge absolved the debtors of personal liability.

California law provides the rule of decision with respect to California property rights. In the absence of reported California decisions, our task is to predict how the California Supreme Court would rule on this appeal.

### I

The nub of the dispute is whether Transamerica's initial resort to security by selling the vehicle somehow offended the "one-action/security-first" rule embodied in Code of Civil Procedure § 726(a), which provides in pertinent part:

> There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter.

CAL. CIV. PROC. CODE § 726(a).

This rule is the cornerstone of what the California Supreme Court has candidly described as "California's complex web of foreclosure and antideficiency laws that circumscribe enforcement of obligations secured by interests in real property." *Western Sec. Bank v. Superior Ct.*, 15 Cal.4th 232, 237, 62 Cal.Rptr.2d 243, 933 P.2d 507 (1997).

The rule overlaps, and can be confused with, antideficiency statutes that forbid deficiency judgments in a variety of situations, especially after a creditor resorts to security. CAL. CIV. PROC. CODE §§ 580a–580d.

■ Code of Civil Procedure § 726 has been construed to mean that in the event of default, a secured creditor must, in a single action, first exhaust all its security as a condition of obtaining a monetary deficiency judgment against the debtor personally. *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal.3d 991, 997, 275 Cal.Rptr. 201, 800 P.2d 557 (1990); *Prestige Ltd. P'ship–Concord v. East Bay Car Wash Partners (In re Prestige Ltd. P'ship–Concord)*, 234 F.3d 1108, 1114 (9th Cir.2000); *Madigan v. Potrans Int'l, Inc. (In re Madigan)*, 122 B.R. 103, 105 (9th Cir. BAP 1991).

The "one-action/security-first" rule can serve as either a shield or a sword.

■ As a shield, Code of Civil Procedure § 726 may be asserted as an affirmative defense if the secured creditor omits any part of the security from a judicial proceeding. *Walker v. Cmty. Bank*, 10 Cal.3d 729, 734, 111 Cal.Rptr. 897, 518 P.2d 329 (1974); *Carnation Co. v. Kristal (In re Kristal)*, 37 B.R. 659, 661 (9th Cir. BAP 1984). The consequence of the affirmative defense is that the secured creditor must exhaust *all* its security before obtaining a money judgment on the debt. *Walker*, 10 Cal.3d at 734, 111 Cal.Rptr. 897, 518 P.2d 329.

■ As a sword, Code of Civil Procedure § 726 can be wielded in the form of a sanction against the secured creditor. *Id.* Specifically, if the secured creditor does not resort to *all* its security before obtain-

ing a money judgment on the underlying debt, the secured creditor may be deemed to have made an "election of remedies" and to have waived the balance of its security. *Id.*[2]

Thus, in this appeal the debtors contend that the deed of trust has become unenforceable. The fallacy in their analysis, as will be seen, is that Transamerica has not resorted to anything other than its security.

## II

■ The first issue is whether the initial resort to security by selling the vehicle in a manner permitted by California's Commercial Code nevertheless offended the "one-action" aspect of its Code of Civil Procedure § 726.

The meaning of "action" for purposes of Code of Civil Procedure § 726 is controlled by the definition at Code of Civil Procedure § 22. CAL. CIV. PROC. CODE § 22;[3] *Wozab*, 51 Cal.3d at 998, 275 Cal.Rptr. 201, 800 P.2d 557.

■ "Action" does not include a nonjudicial foreclosure, which in California is typically a sale by a trustee under a power

of sale in a deed of trust without any invocation of the power of a court. *Wozab*, 51 Cal.3d at 998, 275 Cal.Rptr. 201, 800 P.2d 557; *Walker*, 10 Cal.3d at 736, 111 Cal.Rptr. 897, 518 P.2d 329.

To be sure, such a foreclosure does trigger one of the antideficiency statutes and precludes a subsequent deficiency judgment. CAL. CIV. PROC. CODE § 580d.[4] But that result does not obtain by virtue of Code of Civil Procedure § 726.

In short, regardless of the consequence under the antideficiency statutes, it is plain that a nonjudicial foreclosure does not offend the one-action aspect of the rule. Hence, the exercise of nonjudicial rights against the vehicle was not an "action" covered by Code of Civil Procedure § 726.

## III

The second question is whether the exercise of nonjudicial rights against the vehicle violated the "security-first" facet of Code of Civil Procedure § 726. The answer in the negative, based on California Supreme Court precedents, is confirmed by the clarifying impact of the "mixed collateral" statute in the Commercial Code.

---

**2.** A leading commentator on California defenses accurately points out that this is not a true "election of remedies" among "two or more concurrent but inconsistent remedies":

> By reason of the one action rule of § 726 of the Code of Civil Procedure, however, a creditor that sues or otherwise proceeds on the obligation secured by a deed of trust and obtains a personal judgment against the debtor makes an election and thereby waives the right to foreclose on the security judicially or under a power of sale. Although spoken of as an election, this result obtains not through the traditional election of remedies doctrine but by reason of the proscriptions embodied in California law for the protection of debtors.

ANN TAYLOR SCHWING, CALIFORNIA AFFIRMATIVE DEFENSES 2d § 24.4 (2004) (footnote omitted).

**3.** "Action" is defined as follows:

> An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

CAL. CIV. PROC. CODE § 22.

**4.** The pertinent part of that antideficiency provision is:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

CAL. CIV. PROC. CODE § 580d.

## A

This is a situation in which two items of collateral secure a single debt. In other words, there is "security" and "additional security."

### 1

■ It is long-settled California law that a creditor may resort to additional security following a nonjudicial foreclosure. *Western Sec. Bank*, 15 Cal.4th at 252, 62 Cal. Rptr.2d 243, 933 P.2d 507; *Freedland v. Greco*, 45 Cal.2d 462, 466, 289 P.2d 463 (1955); *Hatch v. Sec.-First Nat'l Bank*, 19 Cal.2d 254, 260, 120 P.2d 869 (1942).

For example, in *Freedland*, interpreting the pre–1963 version of Code of Civil Procedure § 726 that expressly applied to both real and personal property mortgages,[5] the California Supreme Court approved the sale of multiple items of security at different times. There had been a nonjudicial trustee's sale of real property followed by judicial foreclosure of a chattel mortgage and entry of a deficiency judgment. It affirmed the judicial foreclosure of the chattel mortgage, making clear that a creditor is entitled to resort to all its security, but reversed the deficiency judgment as violating Code of Civil Procedure § 580d in view of the prior nonjudicial foreclosure. *Freedland*, 45 Cal.2d at 466–68, 289 P.2d 463.

■ Similarly, in *Western Security Bank*, the California Supreme Court noted that where additional collateral is provided, "[c]reditors may resort to such other security in addition to nonjudicial foreclosure of the real property security." *Western Sec. Bank*, 15 Cal.4th at 252, 62 Cal. Rptr.2d 243, 933 P.2d 507. A creditor that resorts to additional security nonjudicially

"does no more than call on all the security pledged for the debt." *Id.*

Nothing about these decisions suggests that the sequence in which the security is called makes a difference.

While these decisions focus primarily on the antideficiency statutes, it is plain that the California Supreme Court perceived in them no violation of Code of Civil Procedure § 726.

Under this line of authority, then, Transamerica has done no more than call on all the security pledged for the debt and, hence, has not offended the "security-first" aspect of Code of Civil Procedure § 726.

### 2

The "security-first" decisions that premise a sanction of waiving or losing collateral based on a direct enforcement of Code of Civil Procedure § 726 fall into two categories in which antideficiency statutes do not provide a complete answer.

■ First, an unconsented release or waiver of part of the security may eliminate the ability to resort to other security. *Hibernia Sav. & Loan Soc'y v. Thornton*, 109 Cal. 427, 429, 42 P. 447 (1895); *Pac. Valley Bank v. Schwenke*, 189 Cal.App.3d 134, 140–41, 234 Cal.Rptr. 298 (1987); Morris W. Hirsch et al., *The U.C.C. Mixed Collateral Statute—Has Paradise Really Been Lost?*, 36 UCLA L. REV. 1, 51–52 (1988). The "security-first" principle in this context reflects a form of marshaling.

■ Second, resort to property that has not been provided as security may also operate to waive security. Thus, a bank that, before resorting to security, extrajudicially sets off against an account that has not been provided as security waives the

---

**5.** Explicit coverage of personal property mortgages was deleted from Code of Civil Procedure § 726 when California adopted the

Uniform Commercial Code. Cal. Laws of 1963, ch. 819.

right to resort to remaining security. *Wozab*, 51 Cal.3d at 1001–03, 275 Cal.Rptr. 201, 800 P.2d 557. The "security-first" principle in this context protects unsecured creditors who are permitted to reach only unencumbered assets.

■■■ The common thread of the "security-first" sanction decisions is the enforcement of a policy to require that secured creditors exhaust their security before engaging in other collection activity. In this instance, Transamerica is merely looking to its security in a manner that does not offend the policy underlying the "security-first" principle.

## B

The "mixed collateral" statute, originally enacted in 1985 as Commercial Code § 9501(4) and now appearing in the new Article 9 ("Division 9" in California) as Commercial Code § 9604, supports the same conclusion.[6]

The portion pertinent to the analysis of the sequence in which a creditor may resort to security is:

(a) If an obligation secured by a security interest in personal property or fixtures is also secured by an interest in real property or an estate therein:

(1) The secured party may do any of the following:

(A) Proceed, *in any sequence*, (i) in accordance with the secured party's rights and remedies in respect of real property as to the real property security, and (ii) in accordance with this chapter as to the personal property or fixtures.

(B) Proceed *in any sequence*, as to both, some, or all of the real property and some or all of the personal property or fixtures in accordance with the secured party's rights and remedies in respect of the real property, by including the portion of the personal property or fixtures selected by the secured party in the judicial or nonjudicial foreclosure of the real property in accordance with the procedures applicable to real property . . . .

CAL. COM. CODE § 9604(a)(1) (emphasis supplied);[7] *see* Morris W. Hirsch et al., 36 UCLA L. REV. at 59–62.

It is of no consequence that another part of the "mixed collateral" statute creates a specific safe harbor from Code of Civil Procedure § 726 that does not apply to consumer loans. *Compare,* CAL. COM. CODE § 9604(a)(2) (safe harbor), *with id.*

---

**6.** As the pertinent language of current CAL. COM. CODE § 9604(a)(1) tracks the language of former CAL. COM. CODE § 9501(4)(a), we need not formally parse the savings clause of Revised Article 9, CAL. COM. CODE § 9702, to determine which version applies. For clarity, we speak in terms of current law.

**7.** The nonuniform California version collapses § 9–604(a) and (b) into one section. The uniform language of new Article 9 is:

(a) [Enforcement: personal and real property.] If a security agreement covers both personal and real property, a secured party may proceed:

(1) under this part as to the personal property without prejudicing any rights with respect to the real property; or

(2) as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of this part do not apply.

(b) [Enforcement: fixtures.] Subject to subsection (c), if a security agreement covers goods that are or become fixtures, a secured party may proceed:

(1) under this part; or

(2) in accordance with the rights with respect to real property, in which case the other provisions of this part do not apply.

UCC § 9–604(a)–(b).

§ 9604(a)(3)(E) (consumer exception to safe harbor). The terms of that safe harbor do not limit the general applicability of Commercial Code § 9601(a)(1), which applies to all loans, including consumer loans.

As Commercial Code § 9604(a)(1) does not contravene Code of Civil Procedure § 726 regarding the order in which a creditor nonjudicially resorts to multiple items of security, the two statutes may be construed in harmony in accordance with ordinary principles of statutory construction.[8]

So construed, Commercial Code § 9604(a)(1) provides the answer "in any sequence" to the question "which security first?" that arguably lingers in Code of Civil Procedure § 726.

If Transamerica had obtained a deficiency judgment following its taking and sale of the vehicle securing a consumer loan, then Code of Civil Procedure § 726 plainly would have been transgressed in a fashion that would have eliminated the enforceability of the deed of trust.

The fact that Transamerica did not obtain a deficiency judgment (which would have been void under 11 U.S.C. § 524(a)(1)) when it repossessed and sold the vehicle means that the deed of trust continued to be valid because there was no violation of the "security-first" aspect of Code of Civil Procedure § 726.

\* \* \* \* \* \*

8. The need for harmonious construction also follows from the fact that the drafters of new Article 9 recognized the existence of, and did not purport to trump, statutes such as Code of Civil Procedure § 726:

2. Real–Property–Related Collateral. [paragraph omitted.]

This Article does not address certain other real-property-related problems. In a number of States, the exercise of remedies by a creditor who is secured by both real property and non-real property collateral is governed by special legal rules. For example, under some anti-deficiency laws, creditors risk loss of rights against personal

There having been no violation of either the "one-action" or the "security-first" facet of Code of Civil Procedure § 726, Transamerica's deed of trust continued to be enforceable at the time that it made its demand in escrow. Accordingly, the decision of the bankruptcy court is AFFIRMED.

property collateral if they err in enforcing their rights against the real property. Under a "one-form-of-action" rule (or rule against splitting a cause of action), a creditor who judicially enforces a real property mortgage and does not proceed in the same action to enforce a security interest in personalty may (among other consequences) lose the right to proceed against the personalty. Although statutes of this kind create impediments to enforcement of security interests, this Article does not override these limitations under other law.

UCC § 9–604, Official Comment # 2.