In re **SUNNYMEAD SHOPPING CENTER COMPANY, a California partnership, Debtor.**

**METROPOLITAN LIFE INSURANCE COMPANY, Appellant,**

v.

**SUNNYMEAD SHOPPING CENTER COMPANY; David L. Ray, Chapter 11 Trustee, Appellees.**

**BAP No. CC–94–1112–OVRi.**

**Bankruptcy No. LA–93–16525–GM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 16, 1994.

Decided March 27, 1995.

Charles D. Schoor, Los Angeles, CA, for Metropolitan.

C. Douglas Wikle, Woodland Hills, CA, for Sunnymead.

Before OLLASON, VOLINN and RIEGLE [2], Bankruptcy Judges.

### *(AMENDED)* [3] *OPINION*

OLLASON, Bankruptcy Judge:

This is a case of first impression where a secured creditor has objected to court-ordered adequate protection payments for fear that acceptance of the payments might violate California's "one action" rule, California Civil Procedure Code § 726, and the related antideficiency statutes §§ 580a, 580b and 580d, and bar foreclosure of its real property collateral. The creditor appeals the bankruptcy court's order dated December 29, 1993, granting the debtor's motion to require cash collateral to be paid to the secured creditor. **We AFFIRM.**

### STATEMENT OF FACTS

Sunnymead Shopping Center Company ("Sunnymead") filed a voluntary Chapter 11 petition under the Bankruptcy Code [4] on February 25, 1993, one day before the scheduled foreclosure of its primary asset. The asset consisted of real property improved with a shopping center, known as Moreno Valley Plaza, in Riverside, California.

Pursuant to $20 million and $10 million loan agreements, Metropolitan Life Insurance Company ("Metropolitan") had a valid and perfected security interest in the property and all rents, issues and profits of the property. The balance of the secured claim at the time of bankruptcy was approximately $33 million, including unpaid interest of about $3.8 million, according to Sunnymead. The property was valued by the bankruptcy court at $31.5 million.[5]

From November, 1992 to September, 1993, a duly appointed receiver took possession of the property, and collected and held the income. On September 30, 1993, the bankruptcy court appointed Chapter 11 Trustee David Ray ("trustee") after Sunnymead objected that the receiver had improperly failed to bill tenants, collect rents, and to maintain the premises. All cash collateral was turned over to the trustee who sequestered it in two accounts. The cash collateral consisted of the rents, issues, deposits and profits derived from the real property collateral, and totaled approximately $1.6 million as of December, 1993.

The contract rate of interest due on Metropolitan's loans exceeded the interest earned on the cash collateral accounts: Sunnymead was losing approximately $9,000 per month from accumulating interest owed by virtue of its inability to apply the cash collateral to the accruing interest on the debt.

On May 12, 1993, Metropolitan filed a motion for relief from the automatic stay, seeking foreclosure. According to Sunnymead, a final hearing was set for March 5, 1995.[6]

On or about November 24, 1993, Sunnymead filed a "Notice and Motion to Require Cash Collateral to be Paid to Secured Creditor." Sunnymead attempted in its motion to apply all cash collateral not necessary for operating expenses to the accruing interest. The motion pointed out that Metropolitan had refused to accept cash collateral payments and that by doing so it was impeding Sunnymead's attempts to reorganize by increasing the debt and interest expense and depreciating any potential in the property. Sunnymead's partners were also being harmed, Sunnymead argued, because they would incur artificially high tax liability on the net operating income which had accumu-

---

**2.** Hon. Linda B. Riegle, Chief Bankruptcy Judge for the District of Nevada, sitting by designation.

**3.** This Amended Opinion does not alter the judgment entered on March 8, 1995. The amendment reflects a word change on page 3, line 24, footnote 5, changing the name from "Metropolitan" to "Sunnymead" and is therefore clerical in nature only.

**4.** 11 U.S.C. §§ 101–1330.

**5.** Sunnymead claimed that it was entitled to a new valuation hearing and that its appraisal of $35.9 million was more accurate. There is no further information on record as to a subsequent valuation hearing.

**6.** Metropolitan disputed this fact. It stated that the bankruptcy court granted Metropolitan relief from the stay in an order entered May 24, 1994, providing that foreclosure may not be performed prior to March 1, 1995. That order was not made part of the record on appeal.

lated without deduction for interest payments. Sunnymead alleged that Metropolitan's stance was merely an attempt to better its position for stay relief. Metropolitan objected to the motion based on the "uncertain status" of § 726.

At a December 8, 1993 hearing, the trustee informed the bankruptcy court that he was holding approximately $1.6 million in cash collateral, that he could turn over the surplus after reserving amounts for expenses and improvements, and that no monthly payments had yet been made to Metropolitan. The parties agreed that any turnover would be in the form of adequate protection payments as part of the actions for stay relief and trustee appointment.

The bankruptcy court directed the parties to fashion a proposed form of order, including findings and conclusions. Metropolitan participated in drafting the documents, which the court signed over its written objections.

The order granted Sunnymead's motion. The bankruptcy court made the following pertinent finding of fact:

> 5. Metropolitan has a validly perfected security interest in the money which the Debtor seeks to have the chapter 11 trustee pay to Metropolitan. This money consists of rents, issues, deposits and profits derived or to be derived from that certain real property and improvements thereon in Moreno Valley, California, commonly known as Sunnymead Shopping Center (the "Property") and is cash collateral of Metropolitan ("the Cash Collateral").

The bankruptcy court made the following conclusions of law:

> 1. All parties served with the Motion, having been properly served, and the Debtor and its general partners and any persons or entities related to the Debtor or its general partners are estopped and prohibited from litigating or re-litigating the effects of this Order under Sections 726,

580a, 580b and 580d of California Code of Civil Procedure in federal or state court.

> 2. The turnover of Cash Collateral to Metropolitan, as provided in the Order, shall serve as partial adequate protection of Metropolitan's security interest in the Cash Collateral pursuant to 11 U.S.C. Section 363 and such turnover is being ordered at the request of the Debtor, per the Motion, and as part of this Court's motion and order appointing David L. Ray as chapter 11 trustee.

> 3. Compliance with the provisions of the Order, including, without limitation, the provisions requiring the transfer of the Cash Collateral to Metropolitan, shall not be deemed an "action" within the meaning of or a violation of Sections 726, 580a, 580b or 580d of the California Code of Civil Procedure, including, without limitation, a violation of the "security first" or "one-action" principles of California Code of Civil Procedure Sections 726, 580a, 580b or 580d.

> 4. Federal law with respect to adequate protection provided for in title 11, *United States Code,* preempts any and all state law to the extent that compliance with the Order would be considered an "action" within the meaning of or a violation of Sections 726, 580a, 580b or 580d of the California Code of Civil Procedure.

Metropolitan timely appealed the order.

## ISSUES

I. Whether the bankruptcy court can force Metropolitan to accept adequate protection payments over its objection.

II. Whether acceptance of adequate protection payments by Metropolitan is a violation of California's one-action or security-first rule of Cal.Civ.Proc.Code § 726 (West 1994).[7]

---

**7.** Because of our determination in this appeal, we need not address other issues raised by the parties, including whether federal law with respect to adequate protection preempts any state law that would find compliance with the bankruptcy court order to be an "action" within the meaning of or a violation of § 726 and its related antideficiency statutes, and whether the bankruptcy court's order protects Metropolitan's right to foreclose against any possible state court proceedings brought by third parties attempting to bring those payments within the provisions of § 726.

## STANDARD OF REVIEW

■ We review the bankruptcy court's conclusions of law *de novo*. *In re Pecan Groves of Arizona*, 951 F.2d 242, 244 (9th Cir.1991). We make an independent, *de novo* review of the bankruptcy court's interpretation of state law. *In re Park at Dash Point, L.P.*, 985 F.2d 1008, 1010 (9th Cir. 1993). Findings of fact are reviewed for clear error. *In re Siriani*, 967 F.2d 302, 303–04 (9th Cir.1992).

■ The bankruptcy court's choice of remedies is reviewed for an abuse of discretion, since it has broad equitable remedial powers. *In re Goldberg*, 168 B.R. 382, 384 (9th Cir. BAP 1994) (citing *Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993)). Under this standard, "a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Goldberg*, 168 B.R. at 384; *In re Bradford*, 112 B.R. 347, 351 (9th Cir. BAP 1990).

## DISCUSSION

### Jurisdiction

■ The panel makes a threshold determination of its jurisdiction to rule on the issues before it. *In re Mason*, 709 F.2d 1313, 1315 (9th Cir.1983). In this case, there is no contention by the debtor or anyone else that Metropolitan has waived its security interest by accepting the cash collateral, and any future state court actions are purely speculative. The panel will not decide rules of law that will have no effect on the case at bar. *Holloway v. United States*, 789 F.2d 1372, 1374 (9th Cir.1986). However, the panel has determined that the bankruptcy court's order gave actual relief that affected Metropolitan's legal rights, as well as those of all parties in interest, even if those rights have not yet been challenged or exercised. Therefore, a decision in this case would not

be a prohibited advisory opinion. *See In re Shondel*, 950 F.2d 1301, 1308 (7th Cir.1991).

■ In addition, the final order did not necessarily dispose of the issue of whether acceptance of the adequate protection payments constitutes "an action" under § 726, but stated that such an action would be "deemed" not to be an action under § 726, thus invoking notions of preemption. Rather than deal with this issue as one of preemption, the panel chooses to raise the issue of whether the action is one that triggers § 726. We may do this because the record is complete on the subject, it was argued and discussed below, and it is a matter of law. *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir.1985).

### Adequate Protection Payments

■ Under the Bankruptcy Code, the Chapter 11 trustee may use cash collateral without the secured creditor's consent, if the court, after notice and hearing, authorizes such use, in accordance with the provisions of 11 U.S.C. § 363. A court's authorization for use of cash collateral must adequately protect the creditor's interest in that collateral. 11 U.S.C. § 363(e); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–04, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983); *In re Zeeway Corp.*, 71 B.R. 210, 211 (9th Cir. BAP 1987). Fundamentally, 11 U.S.C. § 363 provides a basis for balancing the interests of the secured creditor and the debtor.

■ In the present case, the bankruptcy court authorized the trustee to use a portion of the accumulated rents for operation expenses, maintenance and improvements, and ordered that the surplus should be turned over to Metropolitan as adequate protection of its interest in the cash collateral. 11 U.S.C. § 361(1).[8] Metropolitan does not dispute the fact that it is entitled to adequate protection payments; it does object, however, to the turnover of the funds.

8. Under this section, adequate protection may be provided by "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property...."

■ The panel does not see any merit to an argument that Metropolitan can refuse to accept its own cash collateral. It is fundamental that the bankruptcy court has the power to authorize a use of the estate's property that accommodates both the debtor and the secured creditor. The bankruptcy court may issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). By definition, adequate protection payments do not harm a creditor, but serve as a way to protect its interest in bankruptcy, where state remedies are not available. *Whiting Pools,* 462 U.S. at 203–04, 103 S.Ct. at 2313.

Notwithstanding the above, Metropolitan contends that under California law, acceptance of payments might do it harm. We turn to an examination of the merits of this argument and the state provision in question.

### One-action and Security-first Rules

■ Section 726 is part of the statutory protections and procedures under California law which protect debtors by restricting the secured creditor's remedies for debts secured by mortgages or deeds of trust in real property. *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897, 899, 518 P.2d 329, 331 (1974). Section 726 states, in pertinent part:

> There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter.

Cal.Civ.Proc.Code § 726(a) (West 1994).

■ As construed by the courts, this section is both a "one-action" rule and a "security-first" rule. It compels the secured creditor, in a single action, to exhaust its security judicially before it may obtain a monetary "deficiency" judgment against the debtor. *Sec. Pac. Nat. Bank v. Wozab,* 51 Cal.3d 991, 275 Cal.Rptr. 201, 205, 800 P.2d 557, 561 (1990). Its dual purpose compels competitive bidding to test the value of all security for the debt, and prevents the debtor/mortgagor from subjection to a multiplicity of actions. *In re Madigan,* 122 B.R. 103, 105–06 (9th Cir. BAP 1991); *Walker,* 111 Cal.Rptr. at 901, 518 P.2d at 333. A creditor may violate the "security-first" rule of § 726

by suing on the underlying debt or by collecting from the debtor's noncollateral general assets prior to looking to its collateral. *Resolution Trust Corp. v. Bayside Developers,* 43 F.3d 1230, 1242 (9th Cir.1994), *amended* (9th Cir. Jan. 20, 1994); *Wozab,* 275 Cal. Rptr. at 205–06, 800 P.2d at 561–62.

■ Section 726 is susceptible of a dual application. If timely invoked by a debtor as an affirmative defense, the rule prevents a creditor secured by real property from suing directly on the debt, obliging it instead to foreclose the mortgage and exhaust the collateral before obtaining a deficiency judgment. *Walker,* 111 Cal.Rptr. at 900, 518 P.2d at 332. The debtor may waive the affirmative defense. If a creditor, in violation of § 726, files suit on the note without pursuing foreclosure on the security, the debtor may later invoke the rule as a sanction, and the creditor who obtained a monetary judgment will be deemed to have forfeited its right to further pursue its security interest. *Id.* The sanction aspect of § 726 may not be waivable. *O'Neil v. Gen. Sec. Corp.,* 4 Cal.App.4th 587, 5 Cal.Rptr.2d 712, 717–19 n. 6 (1992). In addition, it may be asserted by a third party with an interest in the property. *Id.; Flack v. Boland,* 11 Cal.2d 103, 77 P.2d 1090, 1092 (1938) (debtor's waiver of defense not binding on junior lienholder).

California courts have sought to define what actions by a creditor constitute "an action" within the meaning of § 726. The circumstances potentially range from the obvious "monetary judgment" to a more liberal interpretation:

> In operation, the "one form of action" rule "applies to any proceedings or action by the beneficiary for the recovery of the debt, or enforcement of any right, secured by a mortgage or deed of trust. The only 'action' that is permitted is foreclosure; any other 'action' is a violation of the rule that invokes severe sanctions."

*Shin v. Superior Court,* 26 Cal.App.4th 542, 31 Cal.Rptr.2d 587, 589 (1994) (quoting 4 Miller & Starr, CALIFORNIA REAL ESTATE § 9:105 at 348 (2d ed. 1989)).

Case law construing § 726 has followed the definition of "action" provided in § 22 of the California Civil Procedure Code:

An action is an ordinary *proceeding in a court of justice* by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

Cal.Civ.Proc.Code § 22 (West 1994) (emphasis added).

A creditor who judicially foreclosed on a chattel mortgage was held to be barred from foreclosing on its real property collateral. *Walker,* 111 Cal.Rptr. at 899, 518 P.2d at 331. A creditor who obtained a prejudgment attachment order against the debtor's unsecured property to enforce an obligation secured by the debtor's real property was held to have violated the one-action rule. *Shin,* 31 Cal.Rptr.2d at 589. An extrajudicial setoff of an account was not an action under § 726, but violated the security-first rule. *Wozab,* 275 Cal.Rptr. at 206, 800 P.2d at 562.

Metropolitan cited a California case where the bank's acceptance from the receiver of sale proceeds from a court-approved, negotiated sale of a portion of its real property collateral and supplemental personal property collateral was held to be a violation of the one-action rule. *Great Am. First Sav. Bank v. Bayside Developers,* 232 Cal.App.3d 1546, 284 Cal.Rptr. 194 (1991) (case removed to district court after judgment; opinion vacated and decertified for publication). The bank had instituted an action for specific performance of the rents and profits clause in its deed of trust. The receiver had been appointed to close escrows on pending sales of completed townhouses. The receiver also sold furniture which was additional collateral under a supplemental security agreement, pursuant to the Uniform Commercial Code. The bank later sold the remaining raw land to itself in a nonjudicial foreclosure sale.

The district court held the removal to be proper and reversed on the merits. *Resolution Trust Corp. v. Bayside Developers,* 817 F.Supp. 822 (N.D.Cal.1993). The Ninth Circuit affirmed the district court. *Resolution Trust Corp. v. Bayside Developers,* 43 F.3d 1230 (9th Cir.1994), *amended* (9th Cir. Jan. 20, 1994). The Ninth Circuit held that the bank did not violate the one-action rule because it filed only one action, and it had not obtained a prior personal money judgment that would have allowed it to execute against Bayside's general assets. *Bayside,* 43 F.3d at 1241. It held that the bank did not violate the security-first rule because it did not collect from Bayside's noncollateral general assets prior to being paid with its collateral. *Id.* at 1242. It stated that the proceeds were "additional collateral," and that there was no rule in California requiring a creditor to look first to its primary security. *Id.* at 1243.

At least one commentator has expressed concern that a lender who seeks to apply the rents to the mortgage debt prior to foreclosure might be viewed as having undertaken an "action" under or violated the security-first provisions of § 726. *See* Patrick A. Randolph, Jr., *When Should Bankruptcy Courts Recognize Lenders' Rents Interests?,* 23 U.C.Davis L.Rev. 833, 864 n. 10 (Spring 1990). The consensus of cases involving enforcement of a security interest in rents, issues or profits associated with real property is that such an action does not trigger § 726. The creditor's action is not a "lawsuit to enforce the security interest and collect its debt" which would allow the creditor "to execute against [the debtor's] general assets"; therefore it is not an "action" under the statute. *Bayside,* 43 F.3d at 1240–41. Neither is such action a violation of the "security first" rule. The rents, issues or profits constitute "additional collateral"; thus the creditor has not collected from the debtor's noncollateral general assets prior to being paid with collateral. *Id.; Trident Center v. Connecticut General Life Ins. Co.,* 847 F.2d 564, 568 n. 3 (9th Cir.1988); *In re Madera Farms Partnership,* 66 B.R. 100, 103 (9th Cir. BAP 1986) (citing *Hatch v. Security-First Nat. Bank of Los Angeles,* 19 Cal.2d 254, 120 P.2d 869, 873–74 (1942) and *Mortgage Guarantee Co. v. Sampsell,* 51 Cal. App.2d 180, 124 P.2d 353, 355–56 (1942)); *In re 500 Ygnacio Assoc., Ltd.,* 141 B.R. 191, 194–95 (Bankr.N.D.Cal.1992). In addition, there is no rule in California requiring a creditor to look to its primary security first. *Bayside,* 43 F.3d at 1243.

In the case before us, Metropolitan has not initiated an action against, nor has it obtained a personal money judgment from, Sunnymead. Metropolitan has not sought to collect its debt from Sunnymead's noncollateral general assets. The parties agreed that the cash collateral is additional collateral under the provisions of the deed of trust. Furthermore, it is clear that the sanction aspect of § 726 is triggered by *the creditor's action.* In this case, Sunnymead brought the motion to pay the cash collateral to Metropolitan, and the court ordered the payments over Metropolitan's objection. Such a situation dispels the need to protect the debtor—protections inherent in the one-action rule and antideficiency statutes.

We hold, therefore, that Metropolitan's acceptance of adequate protection payments in the form of cash collateral payments does not constitute an "action" under § 726. We also hold that acceptance of the adequate protection payments does not constitute a violation of the security-first rule of § 726 because Metropolitan did not seek to collect against noncollateral general assets. Therefore, Metropolitan has not waived its real property security.

## CONCLUSION

The bankruptcy court did not abuse its discretion by ordering that adequate protection payments be made to Metropolitan. Metropolitan's acceptance of payments from its cash collateral does not constitute an "action" within the meaning of § 726 or a violation of the "one-action" or "security-first" principles of § 726 and the related California antideficiency statutes. The judgment of the bankruptcy court is AFFIRMED.