**Antonio C. YAMASHITA, Petitioner for Registration of Lot No. 368, "Guaifan," Municipality of Inarajan, Guam, Petitioner–Appellant,**

v.

**The PEOPLE OF the TERRITORY OF GUAM, Respondent–Appellee.**

**No. 93–16206.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1994.

Decided June 29, 1995.

Joaquin V.E. Manibusan, Jr., Agana, Guam, for petitioner-appellant.

Maria G. Fitzpatrick, Asst. Atty. Gen., Agana, Guam, for respondent-appellee.

---

Before: BROWNING, TROTT and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Dr. Yamashita claims title to land in Guam against the Government of Guam. The theories are, in the alternative, good record title, adverse possession, and estoppel. The case went to trial in the Superior Court of Guam on Dr. Yamashita's petition for registration of the land. The Government prevailed there and on petitioner's appeal to the District Court of Guam, Appellate Division, and we affirm.

### Facts

Both the Government and Dr. Yamashita had colorable claims of title. The Government's claim begins with the Spanish cession of Guam to the United States in 1898, by the Treaty of Paris, subject to certain private property rights established at that time. The United States conveyed to the Government of Guam in 1952 title to lands under its administrative supervision. The Government of Guam used part of the land for a University of Guam experimental farm. A 1986 map showed that the Public Utility Agency of Guam had a chain link fence on the land, and was building sediment tanks there.

Dr. Yamashita's chain of title starts with a conveyance in 1916. Vicente Meno Crisostomo conveyed his interest to Dr. Yamashita's grandfather, Luis Carbullido. Here is the description of the parcel conveyed, called "Guaifan," and consisting of 3.6 hectares (a little under 9 acres):

> One land with cocoanut [sic] plantations situated in the place known as "Guaifan" of the jurisdiction of Inarajan, bounded on the North by the property of Jose Taitague, on the East by the sea, on the South by the property of Vicente Taitague and on the West by the property of Geronimo Meno; measuring said land two hundred meters from East to West and one hundred and eighty meters from North to South equivalent to an area of 3.6000 Has.

Crisostomo's deed begins a colorable chain of title which extends by mesne conveyances to Dr. Yamashita. Crisostomo conveyed to Carbullido, Dr. Yamashita's grandfather, in 1916. Carbullido's daughter, Felicita Yamashita, inherited Carbullido's interest in 1989, and immediately conveyed it to her son Antonio Yamashita, the appellant. The family lived on the land and farmed it for a decade or two, or longer. During the time they lived on it, they paid property taxes on it.

Guam has a modified Torrens system of land registration. Mr. Carbullido unsuccessfully attempted to register his title to the land in 1916, immediately after he obtained the conveyance from Crisostomo. The Registrar of Lands refused to record the deed, because Crisostomo's interest "is not as yet recorded."

It is hard to be sure where Guaifan was in 1916, when Crisostomo conveyed it. The testimony showed some conflict and uncertainty about the exact location of the parcel described in Crisostomo's deed.

### Analysis

■ Dr. Yamashita concedes that it was his burden to prove title good against the world, not merely title good against a cloud, in order to obtain Torrens registration. *See*

Richard R. Powell and Patrick J. Rohan, Powell on Real Property § 920 (1968).

█ Dr. Yamashita did not prove good record title, because he could not establish ownership in Crisostomo, nor could he establish registration in favor of any owner in his line of title. There was no documentary evidence of title in Crisostomo, the earliest grantor in the Yamashita chain of title.

█ He argues that his predecessors in title adversely possessed the land prior to passage in 1953 of Guam Civil Code § 1006. He concedes that § 1006 bars acquisition of title by adverse possession against the Government of Guam or the United States, but argues that § 1006 could not be applied retroactively to land already adversely possessed prior to 1953. We need not decide the retroactivity issue, because Dr. Yamashita did not establish title by adverse possession prior to 1953. The conveyance by the United States to the Government of Guam did not occur until 1952. Prior to that conveyance, whatever land was not privately owned in 1898 was conveyed by Spain to the United States, against which adverse possession could not establish title. *United States v. California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 1668–69, 91 L.Ed. 1889 (1947); *United States v. Vasarajs,* 908 F.2d 443, 446, n. 4 (9th Cir.1990).

There was conflicting evidence about whether the United States recognized private ownership by Dr. Yamashita and his predecessors in title prior to the conveyance to the Government of Guam. Government maps showed the area where Guaifan probably was located as government land. Witnesses testified that a 1938 Navy cadastral map, which was an exhibit at trial, did not show Lot 368 (another designation for Guaifan) and showed the area where Guaifan was supposed to be located as unsurveyed United States government land. A map used in the 1952 transfer of land from the United States to the Government of Guam also indicated that the land on which Guaifan is allegedly located was public land. A map prepared by the Department of Land Management in 1968 before building Inarajan Junior High School, also does not show a Lot 368 and shows the contested area to be government property.

On the other hand, a 1950 title opinion prepared by the title research section of the Base Development Office, Commander Naval Forces Marianas, said that Mr. Carbullido (Dr. Yamashita's predecessor in title) was the "owner" of unsurveyed land known as Guaifan not shown on the 1938 map although "definite recording was denied for the reason that the grantor's title had never been recorded." Dr. Yamashita argues from this opinion that the federal government recognized his title, so he needs no adverse possession against the United States.

█ The trial judge found that the United States Government maps all showed the land as government land prior to the transfer to Guam in 1952, and the title opinion was qualified by the reference to Carbullido's inability to register the land, so no recognition was shown. We will not reverse the trial court's finding of fact in the absence of clear error. *Cf. Oxford Properties & Finance, Ltd. v. Engle,* 943 F.2d 1150, 1153 (9th Cir. 1991). This finding was not clearly erroneous. Credible evidence regarding government recognition went both ways. The judge's conclusion, that Dr. Yamashita had not proved that the United States recognized his predecessor in title's ownership, was compelled by the finding of fact.

The trial court found that Yamashita's predecessors in title had farmed the land and lived on it. It is not clear whether their use continued permanently, or stopped in the 1930's. This lengthy occupancy and use by a single family gives the case special poignancy, but we can find no error in the trial court's analysis: Dr. Yamashita had not proved title in Crisostomo, the most remote grantor in his chain of title, and his predecessors in title could not adversely possess the land against the United States. The applicant for registration has the burden of proof and must establish ownership. *See Tenorio v. Government of Guam,* 527 F.2d 1095, 1096 (9th Cir.1974).

█ Dr. Yamashita also argues that the Government of Guam was estopped to deny title in his predecessors, because it had accepted payment of property taxes from them.

Taxes were in arrears for a number of years in the 1960's and 1970's, but were apparently paid up in full by the Carbullido estate in 1978. Guam law provided for tax assessment to persons "owning or claiming" land, Guam Gov't Code § 19312, so a claimant who was not the owner could be assessed, and the assessment does not imply a government determination of ownership. The assessment establishes no estoppel. Payment of taxes is, as the trial judge said, evidence of open and notorious possession for purposes of adverse possession, but acceptance of taxes does not estop the government from denying title in the person who pays them. The appeal brief cites no authority for the proposition that acceptance of property taxes estops the government from denying title. The proposition does not make sense, because it would make it incumbent on the government to investigate title before accepting the money, an impractical burden. The Guam statutes make proof of payment of taxes necessary but not sufficient to establish a right to registration in some cases. 21 Guam Code Ann. § 29106.

■ Dr. Yamashita objects to the trial court's consideration of two affidavits submitted by the government with its post-trial brief, by government officials explaining recording procedures. There was no motion to strike them, so any issue of their admissibility was waived.

**AFFIRMED.**