In re KING STREET INVESTMENTS,
INC., fka Hardin Mortgage and
Investments, Inc., Debtor.

Tommy J. HARDIN and Ann
Hardin, Appellants,

v.

Louis R. GIANNI, Alice M. Porsche,
James D. Porsche, and Mary
Ann Davis, Appellees.

BAP No. NC–97–1377–RySmMe.
Bankruptcy No. 95–11922.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Jan. 22, 1998.

Decided March 16, 1998.

Thomas P. Kelly, Jr., Abbey, Weitzenberg, Kelly, Nadler, Hoffman & Emery, Santa Rosa, CA, for Tommy J. Hardin and Ann Hardin, appellants.

Marvin Pederson, Santa Rosa, CA, for Louis R. Gianni, Alice M. Porsche, Mary Ann Davis and James D. Porsche, appellees.

Before: RYAN, SMITH,[1] and MEYERS, Bankruptcy Judges.

### OPINION

RYAN, Bankruptcy Judge.

Creditors Tommy and Ann Hardin ("Appellants"), former principals and insiders of King Street Investments, fka Hardin Mortgage and Investment, Inc. ("Debtor"), a now defunct mortgage broker, filed an objection (the "Objection") to the claims of James and Alice Porsche, Mary Ann Davis, and Louis Gianni ("Appellees"). The Objection is based on Appellees' acceptance of a deed in lieu of foreclosure (the "Deed") of a vacant parcel of real property in Lafayette, California (the "Property"), which Appellants contend extinguished any deficiency liability they had to Appellees. The bankruptcy court overruled the Objection, holding that Appellees were not precluded from recovering damages for Debtor's constructive fraud. The bankruptcy court also admitted into evidence the appraisal of Roger Kaminski (the "Kaminski Appraisal"), which Appellants contend was unreliable. We AFFIRM.

### I. FACTS

In April 1991, Rebecca Fleischer, Debtor's loan agent, approached Appellees James and Alice Porsche (the "Porsches") about a lending opportunity. Fleischer told the Porsches that Craig Pilgrim, dba Frontier Properties ("Pilgrim"), wanted to acquire and commercially develop the Property, but he required a loan of $87,500 (the "Original Loan"). Fleischer represented that the Original Loan would be secured by the Property and that the Property had an appraised value of $205,000. Fleischer obtained the value of the Property from an April 4, 1991 letter prepared by Stanley Brobeck (the "Brobeck Letter"), a real estate appraiser.[2] Fleischer also provided the Porsches with a real estate flyer that reflected the value of the Property at $205,000.[3] Because the Porsches had used Debtor as their real estate broker since the mid-1980s, they trusted the expertise and advice of Debtor and Fleischer. Based on this advice, the Porsches loaned Pilgrim $87,500 and took back a first deed of trust on the Property.

When the Original Loan became due and payable in May 1992, Fleischer recommended that the Porsches extend the Original Loan and invest additional money in the Property to pay for engineering and development fees, and the balance due on the Original Loan. Fleischer represented that the

---

1. Hon. Erithe A. Smith, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Specifically, the Brobeck Letter, which Debtor received from Pilgrim, stated that the value of the Property would range from approximately $205,000 (if a building of 5,000 square feet were constructed) to $285,000 (if a building of 7,000 square feet were constructed). The Brobeck Letter also stated that it was more likely that a

building between 3,000 and 5,000 square feet would be approved by the City of Lafayette and that this is "only a hypothetical case, useful for illustration purposes."

3. The flyer did not state that the appraised value of $205,000 was conditioned upon city approval of the construction of a 5,000 square foot building.

value of the Property had increased to $280,-000 with Pilgrim's improvements and gave the Porsches a flyer reflecting this value. Based on this representation, the Porsches granted a loan extension (the "Loan Extension") by rolling over the Original Loan into a new loan of $138,000 (the "New Loan"),[4] and executed a promissory note for $138,000 (the "Note"). The Note was secured by a deed of trust on the Property.

In February 1993, Pilgrim failed to pay off the Note. In August 1993, Pilgrim sent James Porsche a letter informing Porsche of his inability to sell the Property and his proposal to grant Porsche the Deed. Pilgrim's letter also stated that the Property had been in escrow since April 1, 1993, with a prospective buyer at a sale price of $185,000.

Porsche took the letter to Fleischer seeking advice. Fleischer instructed Porsche to accept the Deed because Pilgrim did not have the money to pay Appellees and because the Property was "worth a lot more money than you've got invested in it." Fleischer also told Porsche that she knew somebody who might purchase the Property. Based on Fleischer's advice and representations, Porsche accepted and recorded the Deed.

On July 21, 1994, after learning that the Property was worth much less than what was owed on the Note, Appellees filed a complaint (the "Complaint") in the Sonoma County Superior Court (the "State Action") against Debtor, Fleischer, Garry Cann,[5] Tommy Hardin, Craig Pilgrim (individually and dba Frontier Properties), Cold Partners, Inc., and Brobeck (individually and dba The Brobeck Company) for intentional misrepresentation, negligent misrepresentation, and negligence. Later, Appellees dismissed Brobeck as a defendant and settled with Pilgrim.

On August 4, 1995, Debtor filed a voluntary chapter 7 bankruptcy petition. Rather than seeking relief from the automatic stay to continue the State Action against Debtor, Appellees proceeded to trial against the other defendants. Fleischer subsequently filed her bankruptcy petition leaving Tommy Hardin and Cann as the remaining defendants in the State Action.

On November 13, 1995, Appellees filed proofs of claim (the "Claims") six through nine against Debtor's bankruptcy estate. They attached the Complaint and the Note to the Claims. On September 19, 1996, Appellants filed the Objection, which they amended on October 24, 1996.

On September 17, 1996, the state court entered a default judgment against Cann in the amount of $295,156.70 (the "Default Judgment"), finding that Cann's conduct was oppressive and fraudulent. Hardin prevailed against Appellees.

On March 20, 1997, the Objection hearing was held. Appellees sought damages for the fraudulent misrepresentations and omissions made by Debtor's agents regarding the value of the Property, which caused Appellees to make the Original Loan, Loan Extension, and the New Loan, and later, to accept the Deed. Appellees requested that the bankruptcy court take judicial notice of the Default Judgment for purposes of collateral estoppel of the Claims. Appellants objected to the admissibility of the Default Judgment. The bankruptcy court overruled the objection, although it stated that it would reconsider the issue when it took the matter under submission.

Additionally, although the bankruptcy court repeatedly stated that the hearing was to determine whether the Claims should be allowed and not to fix the amount of damages, it heard testimony by Kaminski regarding the value of the Property and admitted the Kaminski Appraisal, which valued the

---

**4.** The Porsches raised $95,000, and obtained contributions from their daughter, Mary Ann Davis, in the amount of $28,000, and from Louis Gianni in the amount of $15,000 to raise enough money to make the New Loan.

**5.** Garry Cann was also employed as Debtor's real estate agent during the relevant time period. According to Fleischer's deposition testimony, Cann provided Fleischer with the Pilgrim contact, the Brobeck Letter, which included an appraisal of the Property that was used to induce Appellees to make the Original Loan, and other relevant documents. Later, Cann provided Fleischer with the $280,000 figure used to persuade Appellees to make the Loan Extension and New Loan.

Property at no more than $40,000.[6] Appellants' attorney objected to the admission of the Kaminski Appraisal, but did not state the basis for the objection or move to strike the testimony after cross-examining Kaminski. When the bankruptcy court inquired as to the basis for the objection, Appellants' attorney appeared to withdraw the objection when he stated, "I understand, Your Honor."[7]

On the same day, the bankruptcy court, in its Memorandum of Decision, overruled the Objection. The bankruptcy court, based on Kaminski's testimony, declaration, and the Kaminski Appraisal, liquidated the Claims at $187,450.[8] The order was entered on May 6, 1997, and Appellants timely appealed on May 14, 1997.

## II. ISSUES ON APPEAL

1. Whether the bankruptcy court erred in concluding that California's anti-deficiency statutes did not prevent Appellees from recovering damages against Debtor for constructive fraud even though Appellees had previously accepted the Deed.

2. Whether the bankruptcy court erred in concluding that the exception to California's full credit bid rule applied to Debtor's constructive fraud.

3. Whether the bankruptcy court erred in finding Debtor liable for constructive fraud based on the evidence independent of the Default Judgment.

4. Whether the bankruptcy court erred by failing to shift the burden of proof to Appellees to prove the validity of the Claims.

5. Whether Appellants' withdrawal of their objection to the admission of the Kaminski Appraisal, failure to renew their objection, and failure to move to strike Kaminski's testimony during trial precludes them from challenging the admissibility of the Kaminski Appraisal or testimony on appeal.

6. The bankruptcy court stated that it did not matter what the value of the Property was because only $40,000 was available to pay all creditors of the bankruptcy estate.

7. Appellants now dispute for the first time the reliability of the Kaminski Appraisal and argue

## III. STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Mulvania v. United States,* 214 B.R. 1, 4 (9th Cir. BAP 1997) (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 880 (9th Cir.1995), *cert. denied,* 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996)). The existence of fraud is a question of fact which is reviewed for clear error. *See Moore v. Jogert, Inc. (In re Jogert, Inc.),* 950 F.2d 1498, 1504–05 (9th Cir.1991).

We review the bankruptcy court's interpretation of state law de novo. *See Metropolitan Life Ins. Co. v. Sunnymead Shopping Ctr. Co. (In re Sunnymead Shopping Ctr. Co.),* 178 B.R. 809, 814 (9th Cir. BAP 1995) (citing *Steinberg v. Crossland Mortgage Corp. (In re Park at Dash Point, L.P.),* 985 F.2d 1008, 1010 (9th Cir.1993)).

## IV. DISCUSSION

A. *The Bankruptcy Court Did Not Err When It Concluded That California's Anti–Deficiency Statutes Did Not Prevent Appellees From Recovering Damages Against Debtor For Constructive Fraud Even Though Appellees Had Accepted The Deed.*

Appellants argue that the bankruptcy court erred when it ruled that Appellees' acceptance of the Deed did not extinguish all obligations owed to Appellees by Debtor. The bankruptcy court held that even if California's anti-deficiency statutes normally would prevent a recovery by Appellees against Debtor after Appellees had accepted the Deed, the anti-deficiency statutes did not prohibit Appellees from seeking damages against Debtor resulting from Debtor's constructive fraud. We agree.

California's anti-deficiency statutes, which are found in California Code of Civil Procedure ("CCP") §§ 580 and 726, "only

that the bankruptcy court erroneously admitted the Kaminski Appraisal.

8. The parties stipulated that this amount would be offset by the amount already received by Appellees.

proscribe deficiency judgments; an action for damages for fraud is not one for a deficiency judgment." *Glendale Fed. Sav. and Loan Ass'n v. Marina View Heights Dev. Co., Inc.,* 66 Cal.App.3d 101, 135 Cal.Rptr. 802, 824 (1977). California courts have recognized that

> [t]he statutory provisions barring deficiency judgments were not intended to immunize a trustor or a third person who tortiously injures the mortgagee's security interest. A mortgagee whose security interest has been impaired by tortious conduct of a third person is not barred by the antideficiency statutes from recovering damages for such impairment of security.

*Id.* (citing *American Sav. & Loan Ass'n v. Leeds,* 68 Cal.2d 611, 68 Cal.Rptr. 453, 440 P.2d 933, 937 n. 2 (1968)). Additionally, California's anti-deficiency statutes are designed to "protect debtors by restricting the secured creditor's remedies for debts secured by mortgages or deeds of trust in real property." *Sunnymead,* 178 B.R. at 815 (citing *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897, 899, 518 P.2d 329, 331 (1974)). *See also Evans v. California Trailer Court, Inc.,* 28 Cal.App.4th 540, 33 Cal. Rptr.2d 646, 652 (1994) ("The antideficiency statutes do not apply to tort actions against the trustor that seek damages resulting from his or her tortious conduct, even though the amount of damages received may be similar to the amount that would be recovered in an action on the note.") (citation omitted); *Brown v. Critchfield,* 100 Cal.App.3d 858, 161 Cal.Rptr. 342, 350 (1980) ("The anti-deficiency statutes ... should [not] bar recovery of damages caused by a fiduciary's wrongdoing merely because the transaction concerned real property."). Thus, these statutes were not designed to insulate third-party nonborrowers from their tortious conduct.

■ The bankruptcy court accepted for the sake of argument that Appellees' acceptance of the Deed was analogous to a "full credit bid." "A 'full credit bid' is a bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.'" *Alliance Mortgage Co. v. Laurie Samuel Rothwell,* 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 359, 900 P.2d 601, 608 (1995) (en banc) (citation omitted). "Under the 'full credit bid rule' when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid." *Id.* However, the bankruptcy court, relying on *Alliance,* found that the Claims were based on Debtor's constructive fraud and fell within an exception to the full credit bid rule.

In *Alliance,* the plaintiff, a real estate lender, brought an action against a real estate appraiser and broker, a title insurer, and others, alleging that the defendants fraudulently induced the plaintiff to make loans to purchasers of real property. The trial court granted motions to strike portions of the complaint and concluded that the plaintiff's full credit bids for properties at the trustee's sales barred claims for damages that arose from fraudulent representations as to the adequacy of the security. The court of appeals reversed. *See id.* 44 Cal.Rptr.2d at 356, 900 P.2d at 605.

The California Supreme Court affirmed, holding that the plaintiff's "full credit bids [did] not as a matter of law bar its fraud claims against defendants." *Id.* at 367, 900 P.2d at 616. The court held that the full credit bid rule would not apply to the extent that plaintiff's "full credit bids were proximately caused by defendants' fraudulent misrepresentations, and this reliance without independent or additional inquiry was either appropriate given the context of the relationship or was not otherwise manifestly unreasonable." *Id.* at 365, 900 P.2d at 614.[9] Under the circumstances, plaintiff's bids were not deemed an admission of value. *See id.*[10]

---

9. The court also recognized that "the antideficiency statutes do not preclude an action ... for fraud in the inducement of the loan." *Alliance,* 44 Cal.Rptr.2d at 358, 900 P.2d at 607 (citations omitted).

10. Justice Werdegar, in her concurrence, noted that because the plaintiff's action for fraud "against these nonborrower third parties is not an attempt to collect its debt, ... the rule, properly understood, simply does not apply." *Id.* at 370, 900 P.2d at 619 (Werdegar, J., concurring).

■ Following *Alliance,* we hold that Appellees' acceptance of the Deed did not preclude a recovery for damages proximately caused by Debtor's fraudulent misrepresentations or nondisclosures if the reliance was appropriate given Debtor's fiduciary duty to Appellees, or was not manifestly unreasonable.

■ Appellants next argue that because the exception to the full credit bid rule was limited by *Alliance* to "actual fraud," the bankruptcy court's application of this exception to constructive fraud was legally erroneous. Assuming that the full credit bid rule is an appropriate analogy to acceptance of a deed in lieu of foreclosure, we disagree that the exception to the rule is limited to actual fraud.

Appellants rely on *Pacific Inland Bank v. Ainsworth,* 41 Cal.App.4th 277, 48 Cal. Rptr.2d 489, 492 (1995), a California court of appeals case holding that the full credit bid rule barred a lender from maintaining a negligence action against a third-party nonborrower. We believe that the *Pacific* court incorrectly applied *Alliance* in holding that the exception to the full credit bid rule is limited to fraud actions. *See id.*

We do not read the exception to the full credit bid rule as narrowly as the *Pacific* court did. Although *Alliance* addressed the exception to the full credit bid rule as it related to fraudulent misrepresentations, the California Supreme Court did not expressly limit this exception to actual fraud. The court noted that the plaintiff's fraud claims included allegations of negligent misrepresentation and breach of fiduciary duty and acknowledged that "[w]hile we focus on Alliance's intentional misrepresentation claim, justifiable reliance and actual damages are also essential elements of negligent misrepresentation and constructive fraud." *Alliance,* 44 Cal.Rptr.2d at 359 n. 4, 900 P.2d at 608 n. 4. This reference suggests that the Court did not limit its ruling to just actual fraud.

■ Additionally, the *Pacific* court's interpretation of *Alliance* is contrary to the purpose of the full credit bid rule and California's anti-deficiency statutes. Neither the rule nor the statutes are concerned about the relationship between a third-party nonborrower and a lender. Rather, they are designed to "protect debtors by restricting the secured creditor's remedies for debts secured by mortgages or deeds of trust in real property." *Sunnymead,* 178 B.R. at 815 (citing *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897, 899, 518 P.2d 329, 331 (1974)).[11] Thus, we reject the *Pacific* court's holding as contrary to the purpose of the full credit bid rule and the California anti-deficiency statutes and conclude that the full credit bid rule does not bar a creditor/lender from recovering damages caused by the tortious conduct of third-party nonborrowers.

Accordingly, the bankruptcy court did not err when it declined to apply the full credit bid rule to prevent Appellees from recovering damages against Debtor for constructive fraud.

B. *The Bankruptcy Court's Finding Of Constructive Fraud Was Not Clearly Erroneous.*

■ The bankruptcy court found that the evidence, while not sufficient to find Debtor liable for actual fraud, was sufficient to find Debtor liable for constructive fraud. California Civil Procedure Code § 1573 defines constructive fraud as follows: "In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him," or "[i]n any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." Cal.Civ.Proc.Code § 1573 (West Supp.1997). " 'Constructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by

---

11. However, even if the exception to the full credit bid rule only applies to fraud claims, the bankruptcy court's finding of constructive fraud would satisfy this definition. Even the *Pacific* court did not state that the so-called fraud exception to the full credit bid rule was limited to actual fraud, as Appellants urge. *See Pacific,* 48 Cal.Rptr.2d at 492 (stating that "absent a fraud claim, a full credit bid estops a plaintiff from establishing damages").

the latter to his prejudice. (Civ.Code, § 1573.)' " · *Wells Fargo Bank v. Gump (In re Gump)*, 1 Cal.App.4th 582, 2 Cal.Rptr.2d 269, 281 (1991) (citations omitted).

> Constructive fraud allows conduct insufficient to constitute actual fraud to be treated as such where the parties stand in a fiduciary relationship. The difference between actual fraud and constructive fraud is primarily in the type of conduct which may be treated as fraudulent, such as a failure to disclose material facts within the knowledge of the fiduciary....

*Id.* (citing *Toedter v. Bradshaw*, 164 Cal. App.2d 200, 330 P.2d 688, 693 (1958); 1 WITKIN, SUMMARY OF CAL.LAW; § 406, at 365).

Here, the bankruptcy court found that Debtor's agents made false statements to Appellees regarding the value of the Property when Appellees made the Original and New Loans, and accepted the Deed. Additionally, Appellees relied on these statements that grossly overstated the value of the Property. Consequently, the bankruptcy court found that these false statements, which were made within the context of the fiduciary relationship between Debtor and Appellees, constituted constructive fraud.

 Appellants do not dispute that Debtor owed a fiduciary duty to Appellees as their broker and that this duty was breached.[12] Nor do they contest that any liability is premised under a theory of respondeat superior.[13] Rather, they argue that Appellees' reliance was neither reasonable nor justifiable, and thus, the bankruptcy court erred when it held Debtor liable for constructive fraud. Appellants argue, for example, that reliance on the 1991 Brobeck Letter was not justifiable because it stated a conditional value of $205,000 based on a future event that could only be viewed as the expression of an opinion which cannot constitute actionable fraud.

Additionally, the 1993 letter from Pilgrim to Porsche, which tendered the Deed, stated that the Property had been in escrow since April 1, 1993 at a sale price of $185,000 and that Pilgrim had not been able to close the sale because the proposed buyer was unable to sell another property, the proceeds of which would be used to purchase the Property. The letter also contained information regarding the permits and construction of the proposed office building, which revealed that only 2,000 square feet had been approved for the building, as opposed to the 5,000 to 7,000 square feet anticipated in the Brobeck Letter. Thus, Appellants argue that this information put Appellees on notice that the conditions upon which the Brobeck Letter were based had not been fulfilled and that, because Fleischer's advice to accept the Deed was based on the value indicated in Brobeck's Letter, reliance was not justifiable.

We disagree. The bankruptcy court had sufficient evidence to determine that Appellees reasonably and justifiably relied on Fleischer's misrepresentations or material omissions. For example, Appellee James Porsche testified at the Objection hearing that he had been making a number of loans

---

12. In California, a real estate broker " 'has a fiduciary duty to investigate the material facts of the transaction, and ... cannot accept information received from others as being true, and transmit it to the principal, without either verifying the information or disclosing to the principal that the information has not been verified....' " *Salahutdin v. Valley of Cal., Inc.*, 24 Cal.App.4th 555, 29 Cal.Rptr.2d 463, 467 (1994) (citation omitted). California law recognizes that

> for purposes of liability to third parties for torts, a real estate salesperson is the agent of the broker who employs him or her. The broker is liable as a matter of law for all damages caused to third persons by the tortious acts of the salesperson committed within the course and scope of employment.

*California Real Estate Loans, Inc. v. Wallace*, 18 Cal.App.4th 1575, 23 Cal.Rptr.2d 462, 466 (1993) (citations omitted). Additionally, although Cann's contract with Debtor stated that Cann is an independent contractor, this provision does not change the relationship between real estate broker and agent for purposes of vicarious liability under the doctrine of respondeat superior. *See id.* n. 2.

There was sufficient evidence before the bankruptcy court to establish that Debtor, as a real estate broker, owed a fiduciary duty to Appellees, that Fleischer was an employee of Debtor acting in the scope of her employment, and that Debtor, through its agents, breached its fiduciary duty to Appellees.

13. At the Objection hearing, Appellants' attorney agreed with the bankruptcy court that, if Debtor is liable, it is liable under a theory of respondeat superior.

through Debtor for approximately ten years, and always consulted with Fleischer prior to loaning money. Additionally, Fleischer told Appellees that the Property was worth $280,-000, and Appellees relied on that representation of value in extending the Original Loan and the New Loan. Further, Porsche stated that Fleischer told Appellees to accept the Deed because Pilgrim was unable to pay and because "the property's worth a lot more than you've got invested in it."[14] Porsche also testified that he relied on these statements at the time he made the Original Loan, the New Loan, and at the time he accepted the Deed.

■■■ "[T]he reliance element is relaxed in constructive fraud to the extent that we may presume reasonable reliance upon the misrepresentation or nondisclosure of the fiduciary absent direct evidence of lack of reliance." *Wells Fargo Bank*, 2 Cal.Rptr.2d at 281.

The representations of the agents were not, as appellants contend, mere statements of opinion. They were speaking as experienced operators in real estate with a knowledge of such values superior to that of the [Appellees]. As agents of the latter it was their duty to make any investigation of the [Property] that was necessary in order to learn its value.

*Schoenberg v. Benner*, 251 Cal.App.2d 154, 59 Cal.Rptr. 359, 365 (1967). As stated in *Schoenberg*, "[i]n view of the existing confidential relationship and the superior knowledge of the agents, plaintiffs had a right to rely upon the statements and recommendations that were made to them, and had no duty to make an independent investigation." *Id.* (citing *Sime v. Malouf*, 95 Cal.App.2d 82, 212 P.2d 946, 957 (1949)).[15] Here, under the circumstances, Appellees' reliance was not inappropriate or manifestly unreasonable.

*See Alliance*, 44 Cal.Rptr.2d at 365, 900 P.2d at 614. Accordingly, we find that the bankruptcy court, weighing the evidence, did not err when it concluded that Appellees reasonably and justifiably relied on the representations or omissions of Debtor's agents.

C. *Although The Record Is Unclear As To Whether The Bankruptcy Court Erroneously Relied On The Default Judgment, We Need Not Remand Because There Is An Independent Basis For The Bankruptcy Court's Finding Of Constructive Fraud.*

■■■ Appellants argue that the bankruptcy court erred in relying upon the Default Judgment against Cann to find Debtor liable for constructive fraud. While a default judgment against an employee sued in his individual capacity may not be used to bind an employer, *see Bernhard v. Bank of America Nat'l Trust & Savs. Ass'n*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942) and *Ponce v. Tractor Supply Co.*, 29 Cal.App.3d 500, 105 Cal.Rptr. 628, 631–32 (1972), we cannot determine from the record whether the bankruptcy court relied on the Default Judgment to find Debtor liable for constructive fraud.

However, we need not remand to the bankruptcy court to determine whether the bankruptcy court relied upon the Default Judgment because, as discussed above, there was an independent basis for finding Debtor liable for constructive fraud. Consequently, any reliance would be harmless. *See Plummer v. Western Int'l Hotels Co., Inc.*, 656 F.2d 502, 504 (9th Cir.1981) ("In a judge-tried trial, ... 'the admission of incompetent evidence over objection will not ordinarily be a ground of reversal if there was competent evidence received sufficient to support the findings. The judge will be presumed to have disregarded the inadmissible and relied

---

**14.** Additionally, Fleischer never referred him to an attorney to look at the transaction nor referred him to an appraiser to have him appraise the property.

**15.** Although there is some evidence that Appellees may have been aware that the value of the Property was not the $280,000 originally represented to them by Fleischer when they made the New Loan, Fleischer allegedly told Appellees to accept the Deed after Appellees received this

information "because the property's worth a lot more money than you've got invested in it." Appellees had no reason to believe that the value was materially less than Pilgrim's $185,000 list price. Nor, given Appellees' relationship of trust with Defendant, were Appellees required to investigate the true value of the Property. Fleischer also allegedly represented that she knew of somebody who might buy the Property. Appellees stated that they also relied on this advice.

on the competent evidence.'") (quoting E. CLEARY, McCORMICK ON EVIDENCE, § 60, at 137 (2d ed.1972)); *Jordan v. Clark,* 847 F.2d 1368, 1378 n. 13 (9th Cir.1988) (citing *Plummer,* 656 F.2d at 504), *cert. denied sub nom.,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989).

### D. *The Bankruptcy Court Did Not Improperly Shift The Burden Of Proof Regarding The Validity Of The Claims.*

Appellants argue that because the evidence attached to the Claims consisted of copies of unverified complaints filed in the State Action and Appellees did not sign the Claims as required under Federal Rule of Bankruptcy Procedure ("FRBP") 3001(b), the Claims did not constitute prima facie evidence of the validity of the Claims. Additionally, Appellants contend that the introduction into evidence of the recorded Deed overcame the presumed validity of the Claims, thereby shifting the burden to Appellees to prove that the Claims were valid. We disagree.

▇▇▇ A proof of claim filed in bankruptcy is prima facie valid under Bankruptcy Code § 502. *See* 11 U.S.C. § 502 (1994). FRBP 3001(c) requires a creditor to attach a writing to its proof of claim if the creditor bases its claim on a writing. FRBP 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Thus, "a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3rd Cir.1992).

> "[T]he allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by proba-

tive force equal to that of the allegations of the proofs of claim themselves."

*Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 COLLIER ON BANKRUPTCY § 502.02, at 502–22 (Lawrence King, 15th ed.1991)). *See also United States v. Offord Fin., Inc. (In re Medina),* 205 B.R. 216, 222 (9th Cir. BAP 1996); *Murgillo v. California State Bd. of Equalization (In re Murgillo),* 176 B.R. 524, 529 (9th Cir. BAP 1995).

▇▇▇ Here, the Appellees signed their Claims and attached supporting documents, including the Complaint and Note. The Claims, therefore, satisfied the requirements of FRBP 3001(f). *See* BLACK's LAW DICTIONARY 567 (6th ed.1990) (defining "execute" as completing, making, signing, performing, doing, following out, carrying out to its term, and fulfilling the command or purpose of).[16]

Moreover, Appellants failed to rebut the prima facie validity of the Claims. The only "evidence" Appellees presented was a copy of the Deed. As previously discussed, this was insufficient to extinguish the Claims against Debtor (third-party nonborrower) for constructive fraud. Accordingly, the bankruptcy court did not improperly shift the burden of proof to Appellants.

### E. *Appellants' Withdrawal Of Their Objection To The Kaminski Appraisal, Failure To Renew Their Objection, And Failure To Move To Strike Kaminski's Testimony At Trial Constituted A Waiver Of Their Right To Challenge The Admissibility Of The Kaminski Appraisal And Testimony On Appeal.*

Appellants contend that the bankruptcy court erred when it admitted the Kaminski Appraisal over Appellants' objections because the sales relied on by Kaminski in the Kaminski Appraisal were outside the relevant time period and Kaminski conceded that he had difficulty finding comparable sales due to the depressed market.

---

16. Appellees executed the Claims by signing them and attaching the relevant documents. This is all that Official Form 10 requires. Thus, the Claims are prima facie valid. Additionally, we note that Appellants did not object to any technical deficiency to the Claims at the Objection hearing, nor did they challenge the authenticity of the Complaint or the Note.

However, Appellants, waived their right to object to the Kaminski Appraisal and Kaminski's testimony. Federal Rule of Evidence 103 states in pertinent part:

> (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

Fed.R.Evid. 103 (West 1997). The Ninth Circuit recognizes that the failure of an appellant to raise an objection to the admission of evidence before the trial court precludes an appellant from doing so for the first time on appeal. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir.1996) (citing *Fenton v. Freedman*, 748 F.2d 1358, 1360 (9th Cir.1984) (other citation omitted)), *cert denied sub nom.,* —— U.S. ——, 117 S.Ct. 942, 136 L.Ed.2d 831 (1997); *Ignacio v. People of the Territory of Guam*, 413 F.2d 513, 517 (9th Cir.1969) (stating that the "[f]ailure to object [to the admissibility of evidence] acts as a waiver"), *cert. denied*, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970); *Stein v. United States*, 166 F.2d 851, 855 (9th Cir.) (citation omitted), *cert. denied*, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948); *Reidy v. Myntti*, 116 F.2d 725, 730 (9th Cir.1940) (holding that the failure to "question ... the sufficiency of the evidence ... in the trial court" precluded appellant from doing so on appeal).

Additionally, an objecting party must "state the specific grounds for his objection," and the specific objection must be correct. *United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). *See also Ignacio*, 413 F.2d at 517 ("The Supreme Court has held that a general objection 'is insufficient to preserve such a specific claim as violation of a constitutional provision in obtaining the evidence.' ") (quoting *On Lee v. United States*, 343 U.S. 747, 749–50 n. 3, 72 S.Ct. 967, 970 n. 3, 96 L.Ed. 1270 (1952)).

Similarly, "withdrawal of an objection is tantamount to a waiver of an issue for appeal." *United States v. Manarite*, 44 F.3d 1407, 1419 n. 18 (9th Cir.) (citing *United States v. Montoya*, 782 F.2d 1554, 1556 (11th Cir.1986)), *cert. denied*, 515 U.S. 1158, 115 S.Ct. 2610, 132 L.Ed.2d 854, and *cert. denied*, 516 U.S. 851, 116 S.Ct. 148, 133 L.Ed.2d 93 (1995). Once an objection is withdrawn, the failure to renew the objection constitutes a waiver. *See Johnson v. United States*, 318 U.S. 189, 199–200, 63 S.Ct. 549, 554–55, 87 L.Ed. 704 (1943) (holding that the defendant's withdrawal of its objection to the prosecutor's comment to the jury on defendant's refusal to testify, and the failure to renew the objection, constituted an express waiver of any objection to the prosecutor's comment).

Finally, an appellant waives his right to object to allegedly defective testimony on appeal if he does not move to strike the testimony below. *See Yamashita v. People of the Territory of Guam*, 59 F.3d 114, 117 (9th Cir.1995) (holding that in the absence of a motion to strike affidavits that accompanied a post-trial brief, any issue as to their admissibility was waived); *Allen v. Scribner*, 812 F.2d 426, 435 n. 18 (9th Cir.), *op. amended*, 828 F.2d 1445 (9th Cir.1987) (holding that a party waives any objection to an allegedly defective affidavit by failing to move to strike the affidavit).

Here, although Appellants initially objected to the Kaminski Appraisal, they withdrew their objection when the bankruptcy court inquired as to the basis for the objection.[17] Furthermore, the basis for the objection was not apparent from the context in which it was raised. Additionally, after withdrawing their objection, Appellants did not renew their objection. Consequently, Appellants waived their right to challenge the admissibility of the Kaminski Appraisal on appeal.

---

**17.** Specifically, Appellants' attorney responded as follows to the bankruptcy court's inquiry: "I understand, Your Honor." This response can only be interpreted as a withdrawal of Appellants' objection.

Similarly, because Appellants' attorney cross-examined Kaminski on the Appraisal and did not move to strike the testimony, they waived their right to challenge Kaminski's testimony on appeal.

## V. CONCLUSION

In sum, the bankruptcy court did not err in holding that Appellees' acceptance of the Deed did not preclude Appellees' constructive fraud action.

Additionally, the bankruptcy court did not err in finding Debtor liable for constructive fraud based on the evidence that, under the circumstances, Appellees reasonably and justifiably relied on the advice of Debtor's agents concerning the value of the Property. Furthermore, because there is an independent basis for the bankruptcy court's finding of constructive fraud, we need not remand to the bankruptcy court to determine whether it relied on the Default Judgment.

In addition, the bankruptcy court did not err when it refused to shift the burden of proof to Appellees regarding the validity of the Claims.

Finally, Appellants' withdrawal of their objection to the Kaminski Appraisal, failure to state the basis for their objection, failure to renew their objection, and failure to move to strike the Kaminski Appraisal or testimony at trial constituted a waiver and precludes Appellants from challenging the admissibility of the Kaminski Appraisal or testimony on appeal.

Accordingly, we AFFIRM the bankruptcy court's decision to overrule the Objection. We also AFFIRM the bankruptcy court's admission of the Kaminski Appraisal.